Annie Mae HARRIS et al., Appellants,

v.

CAFRITZ MEMORIAL HOSPITAL et al.,
Appellees.

No. 9710.

District of Columbia Court of Appeals.

Argued March 11, 1976.

Decided Sept. 20, 1976.

King David, Washington, D. C., for appellants.

F. Wainwright Barnes, Washington, D. C., for appellee Cafritz Memorial Hospital.

Thomas J. Scanlon, Washington, D. C., for appellee Basdeo Balkissoon, M.D.

Before KERN, GALLAGHER and MACK, Associate Judges.

PER CURIAM:

This is a medical malpractice action in which the trial court directed a verdict in favor of appellees (defendants) at the close of appellants' (plaintiffs') case in chief. On appeal, appellant argues that the court erroneously refused to invoke the doctrine of *res ipsa loquitur*. We affirm.

Appellant Ms. Annie Mae Harris instituted this action for her five-year-old son Michael to recover damages for injuries to the child's hand and thigh allegedly resulting from treatment provided by appellees, Dr. Basdeo Balkissoon and Cafritz Memorial Hospital. Michael was taken to Cafritz Hospital on July 17, 1972, after his left hand was severely burned by scalding water. He remained in the hospital and received treatment for the burn from Dr. Balkissoon. Seventeen days after his admission, a skin graft was performed on his hand with a segment of skin which had been removed from his thigh. The child continued to receive treatment and therapy until he was discharged from the hospital on September 10, 1972. At that time, appellant was instructed to bring Michael back to the hospital approximately twice a week for physical therapy, and an appointment with Dr. Balkissoon was made for one week later. Appellant did not take the child back to the hospital for therapy, nor did she return to Dr. Balkissoon, despite repeated phone calls from his office.[1] Michael received no further treatment until he was taken to Children's Hospital for a

rash eight months later. There, doctors discovered that the skin between his fingers had grown together, making him unable to move his hand, and that keloids, or excessive scar tissue, had formed on his thigh.

At trial, appellant's evidence consisted of her own testimony and testimony from her mother, her niece and Dr. Balkissoon. Appellant first testified that when Michael left Cafritz Hospital, his hand was in a splint which did not separate his fingers, that his hand had not healed, and that he could move his fingers. Appellant's fifteen-year-old niece testified that the baby's hand was not in a splint and his fingers were "stuck together" when he came home from the hospital. Appellant's mother testified that the baby's hand was in a splint which did not separate the fingers and that she thought the keloids had also formed at that time. The next witness, Dr. Balkissoon, testified that he used the "open treatment" in dealing with skin loss, that the child's hand had not completely healed when he was discharged, but that it was in good condition, the skin separating the fingers had not healed improperly, and the child's thigh was healing well. He also stated that he instructed appellant, among other things, to remove the splint intermittently and to allow the child to move and flex his hand. The doctor attributed the condition of the hand to Michael's failure to receive continued treatment or physical therapy and to neglect at home. Appellant was then recalled and contradicted her earlier testimony, stating that the child's hand had completely healed when she took him home from the hospital and was in an immobile condition, similar to that at the time of trial.

At the close of appellant's evidence, the trial court granted appellees' motion for a

---

1. Appellant testified that she did not return the child for treatment because of financial problems and the pressures of work. She sub-

sequently testified that she thought the appellees performed a bad job and she wanted nothing more to do with them.

directed verdict on the ground that appellant had failed to provide any evidence of the "standard of care" applicable to the treatment challenged and had failed to show that the child's injury was caused by such treatment. Appellant contends that expert testimony was not required because the doctrine of *res ipsa loquitur* is applicable.

In a medical malpractice case, expert testimony establishing a failure to meet the appropriate standard of care[2] is unnecessary if the evidence is sufficient to allow application of the doctrine of *res ipsa loquitur*. *Smith v. Reitman*, 128 U.S. App.D.C. 352, 389 F.2d 303 (1967); *Quick v. Thurston*, 110 U.S.App.D.C. 169, 290 F. 2d 360 (1961); W. Prosser, Handbook of The Law of Torts § 39 at 227 (4th ed. 1971). Under that doctrine, the jury is permitted to infer negligence if the consequences of professional treatment are those which ordinarily would not occur when due care is exercised. *Lathon v. Hadley Memorial Hospital*, D.C.App., 250 A.2d 548, 549 (1969); *Burke v. Washington Hospital Center*, 154 U.S.App.D.C. 253, 254, 475 F. 2d 364, 365 (1973); *Brown v. Keaveny*, 117 U.S.App.D.C. 117, 118, 326 F.2d 660, 661 (1963). Where laymen can say, as a matter of common knowledge and observation, that the type of harm would not ordinarily occur in the absence of negligence, the jury is allowed to infer negligence without expert testimony being presented. *Haven v. Randolph*, 161 U.S.App.D.C. 150, 151, 494 F.2d 1069, 1070 (1974); Prosser, The Law of Torts, *supra* at 227.[3] However, if a case involves the merits and performance of scientific treatment, complex medical procedures, or the exercise of professional skill and judgment, a jury will not be qualified to determine whether there was unskillful or negligent treatment without the aid of expert testimony.[4] As a basis for invoking the doctrine of *res ipsa loquitur* in this type of situation, the plaintiff must at least present some expert opinion that the event will not usually occur if due care is used. *Raza v. Sullivan*, 139 U.S.App.D. C. 184, 186–87, 432 F.2d 617, 619–20 (1970), *cert. denied*, 400 U.S. 992, 91 S.Ct. 458, 27 L.Ed.2d 440 (1971); *Smith v. Reitman, supra,* 128 U.S.App.D.C. at 353, 389 F.2d at 304; *Quick v. Thurston, supra,* 110 U.S.App.D.C. at 172, 290 F.2d at 363; *Bardessono v. Michels*, 3 Cal.3d 780, 91 Cal.Rptr. 760, 478 P.2d 480, 485 (1970); Prosser, The Law of Torts, *supra* at 227 n. 1.

When viewed in the light most favorable to appellant, the evidence in this

---

2. A physician undertakes to exercise that degree of care and skill ordinarily exercised by members of the medical profession. *Quick v. Thurston*, 110 U.S.App.D.C. 169, 290 F. 2d 360 (1961).

3. *See, e. g., Burke v. Washington Hospital Center, supra* (failure to remove surgical sponge); *Washington Hospital Center v. Butler*, 127 U.S.App.D.C. 379, 384 F.2d 331 (1967) (fall from rotating X-ray table); *Young v. Fishback*, 104 U.S.App.D.C. 372, 262 F.2d 469 (1958) (failure to remove gauze during surgery). *But see Johnston v. Rodis*, 102 U.S.App.D.C. 209, 251 F.2d 917 (1958) (fractured arm during electric shock treatment, *res ipsa loquitur* inapplicable).

4. As Dean Prosser explained:
   Since a physician or surgeon normally undertakes only to exercise the skill and care common to the profession, there usually is not enough in a mistaken diagnosis alone, or the unfortunate choice of the wrong method of treatment or the kind of accident or undesirable result which happens in spite of all reasonable precautions, to show the necessary lack of skill or care. What this means is that ordinarily laymen are not qualified to say that a good doctor would not go wrong, and that expert testimony is indispensable before any negligence can be found. [Footnotes omitted.] [Prosser, The Law of Torts, *supra*, at 226–27.]

*See also Haven v. Randolph, supra; Brown v. Keaveny, supra; Rodgers v. Lawson*, 83 U.S. App.D.C. 281, 170 F.2d 157 (1948).

case shows that the child's hand and thigh may have healed improperly at the time he left the hospital. However, sophisticated, complex and continuing treatment is involved in restoring severely burned skin tissue, particularly on an infant. Here we cannot say that it is a matter of common knowledge that the deformity ordinarily would have resulted only if appellees had been negligent in some way. At the very minimum, an expert opinion to this effect was required to supply a foundation for the doctrine of *res ipsa loquitur*.

The facts and inferences justifying the invocation of the doctrine can sometimes be found in overall evidence (including testimony of the defendant physician) rather than in evidence provided by a medical expert. *See Haven v. Randolph, supra; Brown v. Keaveny, supra,* 117 U.S.App.D. C. at 119, 326 F.2d at 662 (Wright, J., dissenting). However, in this case, Dr. Balkissoon testified that he followed standard procedures in performing the skin graft and providing subsequent treatment. He was not questioned about other possible methods of treatment, or more important, about the possibility or probability of deformity occurring if accepted treatment is properly administered. When questioned about the child's thigh, the doctor observed that the child was "[a]pparently a keloid former" and stated that if he had known this he might have tried to prevent keloid formation with X-ray treatment. However, he also testified that there is no way to determine who will be a keloid former.[5] Nothing in this testimony provided the requisite foundation for *res ipsa loquitur*. In considering appellant's evidence, the jury could only have speculated as to any possible negligence on the part of appellees.

*Affirmed.*

5. The doctor was not asked about keloidal tissue on the child's hand, and the record does not provide any indication of whether the condition of the hand is due to keloid formation.