Diana S. QUIN et al., Appellants,

v.

The GEORGE WASHINGTON UNIVER-
SITY et al., Appellees.

No. 13883.

District of Columbia Court of Appeals.

Argued April 26, 1979.

Decided Oct. 3, 1979.

Barry J. Nace, Washington, D. C., with whom Richard S. Paulson, Washington, D. C., was on the brief, for appellants.

Denver H. Graham, Washington, D. C., for appellees.

Before KELLY, GALLAGHER and FER-REN, Associate Judges.

GALLAGHER, Associate Judge:

This appeal raises questions concerning the propriety of a res ipsa loquitur instruction in a medical malpractice case. Appellant Diana Quin, wife of the deceased patient, brought a wrongful death and survival action[1] against decedent's surgeons, Drs. Shorb and Knoll, and the George Washington University Hospital (the Hospital). The jury returned a verdict in favor of the Hospital and both doctors. On appeal, Mrs. Quin relies principally upon the trial court's failure to grant the requested res ipsa loquitur instruction. However, she advances additional claims of error which, she asserts, also warrant reversal: (1) the trial court improperly curtailed cross-examination of the defendant physicians[2] and (2) the court erroneously refused to admit two medical journal articles into evidence to impeach Dr. Knoll's testimony.[3] We affirm.[4]

## I.

Mr. Quin entered the George Washington University Hospital for surgical removal of his spleen. The splenectomy was recommended by Mr. Quin's physician after tests revealed a condition known as hypersplenism. Hypersplenism involves an enlarged spleen which if left in the body destroys platelets in the blood, and creates a risk of excessive bleeding. Dr. Shorb performed the operation, assisted by Dr. Knoll who was a chief resident in surgery at the time.

Following surgery, Mr. Quin's condition was stable, and his post-operative recovery appeared normal. That evening, five hours after the operation, Mr. Quin was found in a state of respiratory arrest. Medical personnel began resuscitation efforts. At this point, Mr. Quin manifested signs of abdominal hemorrhaging, and he was prepared for exploratory surgery. The surgeons' notes, prepared after the exploratory surgery, indicated massive hemoperitoneum (3 to 4 liters of blood in the abdominal cavity). The notes identified an "open hole in the

---

1. See D.C.Code 1973, §§ 16–2701, 20–1505; 12–101, respectively.

2. Appellant sought to cross-examine the physicians upon depositions offered by other doctors to show a difference of opinion as to Mr. Quin's life expectancy and the seriousness of his illness. We find no abuse of discretion by the trial court in rejecting counsel's argument that such cross-examination should be permitted as analogous to the use of medical treatises for impeachment purposes.

3. The trial court did not err in refusing to receive the medical articles into evidence. See 2 Jones on Evidence § 12.31 (1972) ("the pre-

vailing view of the courts is that books or treatises which deal with [medicine, surgery, mechanics] are barred by the rule against hearsay as evidence of facts or opinions stated therein, no general exception having been developed to make them admissible"); Fed.R. Evid. 803(18) (statements contained in learned treatises may be read into evidence but may not be received as exhibits). The articles were marked for identification and used extensively on re-direct and re-cross.

4. We find without merit appellant's additional claims of prejudicial error.

splenic vein" as the source of hemorrhage, "although the vessel had been previously adequately ligated at the previous procedure." The splenic vein was religated, and Mr. Quin was closed up.

Mr. Quin continued to bleed after the exploratory operation, so the surgeons performed a second exploration. At this time, they discovered a laceration of the dome of the liver, one of the known side effects of pulmonary resuscitation, which was treated. Mr. Quin's condition continued to deteriorate and he died of liver failure due to extensive blood loss resulting from abdominal hemorrhaging.

At trial the expert medical testimony focused on the meaning of the post-operative notes, specifically the phrase "open hole in the splenic vein." Appellant's experts, Drs. Golkin and Barrick, testified that the phrase referred to the *end* of the vein. In their view, the surgeons had improperly ligated major splenic vessels, and the suture ligature had slipped off. Both doctors opined that the injury would not have occurred if standard operating procedure had been followed. As Dr. Golkin testified at his deposition, he could not envision a properly tied suture coming loose. Neither had ever heard of a spontaneous rupture of the splenic vein following a splenectomy.

Dr. Knoll, on the other hand, testified that his notes described the intima or inner walls of a ruptured vein, not the end. It was apparently his position that a spontaneous rupture of the vein took place due to a weakened vessel wall. There was some testimony, however, that pressure caused a "blowout" of the vein. Drs. Shorb and Knoll referred at trial to several medical journal articles on which they based their opinions that a spontaneous rupture could occur. Although slippage of a tie and spontaneous ruptures are both "uncommon events," it was Dr. Knoll's opinion that a ligature slippage was less likely to happen.

At the close of all the evidence, appellant requested that the case be submitted to the jury under the doctrine of res ipsa loquitur, along with the direct evidence of negligence. The trial court denied appellant's requested res ipsa loquitur instruction. The doctrine was not applicable, in the court's view, because "it cannot be said that the defendant in fact had exclusive control of the instrumentality of the injury, since the instrumentality of the injury is not in fact known." As the court stated, "while Mr. Quin's death may have been caused by profuse bleeding from the splenic vessel, the cause of that bleeding is not known inasmuch as there is conflicting evidence on that point."

Since we find insufficient evidence in the record to invoke res ipsa loquitur, the trial court's failure to instruct the jury was not reversible error.

## II.

■ The doctrine of res ipsa loquitur, when applicable, permits the jury to infer negligence from the mere occurrence of an accident. As stated in an early decision, the happening itself "affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." *Kerlin v. Washington Gas Light Co.*, 110 F.Supp. 487, 489 (D.D.C. 1953), citing *Scott v. London & St. Katherine Docks Co.*, 3 H&C 596, 159 Eng.Rep. 665 (1865). *See also Evans v. Byers*, D.C. App., 331 A.2d 138, 140 (1975). When properly invoked in a medical malpractice case, res ipsa loquitur supplies evidence that the defendant physician failed to meet the requisite standards of care and skill. *See, e. g., Smith v. Reitman*, 128 U.S.App.D.C. 352, 353, 389 F.2d 303, 304 (1967). The doctrine, therefore, helps the plaintiff overcome two difficulties often encountered in medical malpractice cases: (1) inability to obtain favorable expert testimony and (2) inability to explain the events causing injury, and prove specific acts of negligence by the defendant-doctor. *See* Comment, *The Application of Res Ipsa Loquitur in Medical Malpractice Cases*, 60 Nw.U.L.Rev. 852 (1966).

■ This court permits the plaintiff in a proper case to rely upon both res ipsa loquitur and proof of specific acts of negligence.

*Levy v. D.C. Transit System, Inc.*, D.C.Mun. App., 174 A.2d 731, 732–33 (1961). As we stated:

> Though *some* evidence may tend to show the specific cause of an accident, a plaintiff should not be deprived of the benefit of the doctrine if after his case in chief is in, the true cause is still left in doubt or is not clearly shown. [*Id.* at 733, quoting from *Lindsey v. D.C. Transit Co.*, D.C.Mun.App., 140 A.2d 306, 308–09 (1958); emphasis in original.]

This rationale would appear applicable to a medical malpractice case.

■ In a medical malpractice case, as in negligence cases generally, res ipsa loquitur applies where the consequences of professional treatment (1) ordinarily do not occur in the absence of negligence,[5] (2) are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) are not due to any voluntary action or contribution on the part of the plaintiff. *Sullivan v. Snyder*, D.C.App., 374 A.2d 866, 867–68 (1977).

■ It has been said that "ordinarily" is the key concept of res ipsa loquitur. *Raza v. Sullivan*, 139 U.S.App.D.C. 184, 432 F.2d 617, 620 (1970), *cert. denied*, 400 U.S. 992, 91 S.Ct. 458, 27 L.Ed.2d 440 (1971). At the threshold, plaintiff must demonstrate that the injury ordinarily does not occur when due care is exercised. *Harris v. Cafritz Memorial Hospital*, D.C.App., 364 A.2d 135, 137 (1976), *cert. denied*, 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977). Due to the "great variety of infections and complications which, despite all precautions and skill, sometimes follow accepted and standard medical treatment," an inference of negligence in a malpractice suit cannot be based solely on the fact that an adverse

result follows treatment. *Quick v. Thurston*, 110 U.S.App.D.C. 169, 172–73, 290 F.2d 360, 363 (1961). There must be a basis in the record or in common experience to warrant the inference. *See, e. g., Smith v. Reitman, supra* at 353, 389 F.2d at 304.

■ This court has stated that res ipsa loquitur applies only when a layman can infer negligence as a matter of common knowledge. *See, e. g., Lathon v. Hadley Memorial Hospital*, D.C.App., 250 A.2d 548 (1969). However, in line with recent trends, this narrow application of the doctrine has been discarded. We acknowledged in *Harris, supra* at 137–38, that the probability of negligence may also be established by expert opinion, and in some cases by the overall evidence (including testimony of the defendant-physician). As we stated:

> [I]f a case involves the merits and performance of scientific treatment, complex medical procedures, or the exercise of professional skill and judgment, a jury will not be qualified to determine whether there was unskillful or negligent treatment without the aid of expert testimony. As a basis for invoking the doctrine of res ipsa loquitur in this type of situation, the plaintiff must at least present some expert opinion that the event will not usually occur if due care is used. [*Id.* at 137; citations omitted.]

*See also Raza v. Sullivan, supra* (testimony of oral surgeon that wisdom tooth extractions do not, if accepted procedures are observed, normally result in jaw bone fractures warranted application of res ipsa loquitur).[6]

Thus, if an expert can say as a matter of expert knowledge that the injury does not ordinarily occur unless caused by negli-

5. *Harris v. Cafritz Memorial Hospital*, D.C. App., 364 A.2d 135, 137 (1976), *cert. denied*, 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977). *See also Walden v. Washington Hospital Center*, D.C.App., 304 A.2d 645, 646 (1973); *Quick v. Thurston*, 110 U.S.App.D.C. 169, 172, 290 F.2d 360, 363 (1961).

6. The case was distinguished from *Smith v. Reitman, supra*, which also involved a jaw injury incident to a dental operation. In *Smith*,

however, the expert witness gave no explication of accepted procedures or how negligence could on occasion intrude into those procedures. *Raza v. Sullivan, supra* at 187, 432 F.2d at 620. Plaintiff's expert medical testimony in *Raza* embraced the possibility that the injury could have been the consequence of negligence in the sense that the defendant, in the execution of the applicable accepted procedures, may have deviated from them.

gence, the jury should be permitted to infer negligence from the occurrence.

Since the likelihood of abdominal hemorrhaging after a splenectomy is not common knowledge, this case required expert testimony to supply a foundation for the doctrine. Drs. Golkin and Barrick, appellant's expert medical witnesses, testified that a hole in the splenic vein will not ordinarily follow a splenectomy if due care is exercised. Dr. Barrick admitted that the splenectomy as described in the post-operative notes followed accepted procedures. However, based on the injury he concluded that defendants deviated from the standard procedure by improperly ligating the vein. Thus, appellant's evidence, if credited, established negligence in the surgical procedure as the cause of the injury. *Compare Quick v. Thurston, supra* (res ipsa loquitur not applicable where plaintiff's expert confirmed defendant's testimony that negligence was not the only potential source of infection).

■ A question arises as to the effect of appellant's expert testimony in light of appellees' conflicting evidence that the injury arose from natural causes (spontaneous rupture). Several jurisdictions, most notably California, permit a conditional res ipsa loquitur instruction in such situations. As the California Supreme Court stated:

> Where the evidence is conflicting or subject to different inferences, it is for the jury, under proper instructions, to determine whether each of the conditions necessary to bring into play the rule of res ipsa loquitur are present. [*Seneris v. Haas*, 45 Cal.2d 811, 291 P.2d 915, 924 (1955) (en banc); citation omitted.]

*See also* 1 Louisell & Williams, Medical Malpractice § 14.09, at 458 (1977). Under this approach, a mere dispute in the evidence is for the jury to resolve as a prerequisite to application of res ipsa loquitur. *See Cho v. Kempler*, 177 Cal.App.2d 342, 2 Cal.Rptr. 167, 172 (1960). The question is for the jury if reasonable men may differ as to the "balance of probabilities." *Id.* at 350, 2 Cal.Rptr. at 171.

■ We conclude, however, that appellant was not entitled to the benefit of a res ipsa loquitur instruction under the facts of this case. A review of the evidence shows two equally plausible conclusions were deducible, *i. e.*, the hole in the splenic vein arose from improper ligation by the surgeons, or from natural causes (spontaneous rupture). The presence of conflicting medical testimony indicates a lack of consensus in the medical field as to the cause of abdominal hemorrhaging following a splenectomy, despite agreement that such hemorrhaging is a rarity.

In determining the point at which the doctrine will apply, we must be fair to the patient who has received a result which either common or expert knowledge teaches ordinarily would not occur without negligence, and to the doctor if there is a result which could occur without negligence. *See* 2 Speiser, The Negligence Case: Res Ipsa Loquitur § 24:2, at 203 (1972). "A study of the cases both pro and con on the application of the doctrine in malpractice actions demonstrates that the doctrine is applicable only where it is a matter of common knowledge among laymen or medical men or both that the injury would not have occurred without negligence." *Salgo v. Stanford University Board of Trustees*, 154 Cal. App.2d 560, 317 P.2d 170 (1957).

Res ipsa loquitur has been called "a picturesque way of describing a balance of probability on a question of fact on which little evidence either way has been presented." *Washington Loan & Trust Co. v. Hickey*, 78 U.S.App.D.C. 59, 61, 137 F.2d 677, 679 (1943) (citation omitted). It would do violence to the concept to permit a jury to balance possibilities rather than probabilities. Thus, we find the trial court properly refused to charge the jury as to res ipsa loquitur.

■ A second aspect of res ipsa loquitur raised problems in the trial court: appellees' control of the instrumentality causing injury. The trial court found the situation "a long way from one in which the cause of the injury is known." As the court stated:

[T]he jury could infer from the evidence that the cause of the bleeding, that is the cause of the injury, was that the ligature came undone, or that the decedent suffered a spontaneous rupture of the splenic vessel. At best, the jury could infer that it was more likely than not that the source of the bleeding was the end of the vessel. You may then infer that the reason for the bleeding from the end of the vessel was that the ligatures came undone, and then infer that if the ligatures came undone they were more likely than not improperly tied.

It is correct that to prove the requisite control, plaintiff must establish "first and foremost the nature of the instrumentality which is alleged to have caused the injury." 1 Speiser, The Negligence Case: Res Ipsa Loquitur § 2:9, at 48 (1972). Res ipsa loquitur permits an inference that a known accident was caused in a negligent manner. It does not, however, raise an inference as to what did occasion the injury. *See Kerlin v. Washington Gas Light Co., supra* at 488 (distinction drawn between cause of the accident and the manner in which it was caused, lack of knowledge of which in plaintiff is a reason for the doctrine).[7]

■ Plaintiff need only introduce evidence with sufficient probative force to support an inference that his injury was "probably" caused by an instrumentality under defendant's exclusive control. *See, e. g., Martin v. Stratton*, 515 P.2d 1366, 1370 (Okla.1973). An inference may flow automatically where a defendant is in complete control of a procedure which results in injury, and he alone has the means of knowing what occurred. To force the plaintiff in such a situation to allege how and by what means his injury occurred, it has been urged, would do violence to the principle behind res ipsa loquitur. *Shields v. King*, 40 Ohio App.2d 77, 317 N.E.2d 922, 927

(Ct.App.1973) (record contained expert medical testimony that the only two possible causes of fatal infection were linked to dialysis procedure, which was within defendant's control). This case does not present an analogous situation, given the expert testimony that the injury could have resulted from natural causes.

■ When plaintiff relies on circumstantial evidence to establish causation as an element of res ipsa loquitur, the evidence must make plaintiff's theory reasonably probable, not merely possible, and more probable than any other theory based on the evidence. *See Palleson v. Jewell Cooperative Elevator*, 219 N.W.2d 8, 13 (Iowa 1974). *See also Kerlin, supra* at 488.

We conclude that res ipsa loquitur was not applicable on these facts and the instruction was properly denied.

*Affirmed.*

---

7. In *Kerlin, supra*, the court rejected defendant's contention that the cause of the accident was unknown because no witness saw the propelled object, which struck plaintiff, leave defendant employee's pick. As the court stated, "[t]hat contention, however, ignores the rule that facts can be established by circumstantial as well as direct evidence, and there appears no rational basis for explaining the propulsion of the object against plaintiff, under the foregoing facts, other than that it was an act of defendant's employee while engaged in the picking operations." 110 F.Supp. at 488.