**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al.,**
**Appellants,**

v.

**L'ENFANT PLAZA PROPERTIES,**
**INC., Appellee.**

**No. 81–557.**

District of Columbia Court of Appeals.

Argued March 24, 1982.

Decided July 8, 1982.

Christopher E. Hassell, with whom Leo A. Roth, Jr., Washington, D. C., was on the brief, for appellants.

Daniel M. Litt, with whom Warren K. Kaplan, Washington, D. C., was on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and KERN, Associate Judges.

KERN, Associate Judge:

This appeal arises from an action for injunctive relief and damages brought by appellee, L'Enfant Plaza Properties, Inc., against appellants, Washington Metropolitan Area Transit Authority (WMATA) and the District of Columbia, regarding the subsidence of appellee's water service line. Following a bench trial, the court entered findings of fact and conclusions of law and granted appellee's request for a preliminary and permanent injunction. Appellants subsequently filed this joint appeal, urging that (1) the trial court's findings regarding the causation of subsidence of the water line and the imminence of irreparable harm are erroneous; (2) appellant WMATA is not liable for any negligent acts of its independent contractors; (3) there is no proper basis for the imposition of liability on appellant District of Columbia; and (4) the trial court's consolidation of the hearing on the preliminary injunction with a trial on the merits of the permanent injunction denied appellants their right to a jury trial. We affirm the trial court as to each issue.

I

WMATA was involved in construction of the Metro subway line under D Street, S.W., and the L'Enfant Plaza Station from 1972 to 1976. This construction required that the area be excavated to a depth in excess of 35 feet from the surface to the top of the subway structure by means of "open-cut" construction. During the construction, the District's main water line ("water main") and the water line for L'Enfant Plaza's East Building were suspended above the excavation by attaching them to the steel deck beams that held up the roadway on D Street. L'Enfant's water line is approximately 39 feet long and is connected to the District's water main.

After installation of the station, the excavation was backfilled with dirt and compacted. The remaining space between the backfill and water lines was filled with poured concrete for additional support. The water line and water main were then disconnected from the deck beams and their support was transferred to the backfill and concrete. Additional backfill was placed on top of the water line and the roadway was resurfaced.

Shortly after completion of the subway construction, a visible settlement occurred in D Street directly over the water main and water line. Subsequent settlement occurred in the sidewalk outside L'Enfant Plaza's East Building. L'Enfant's water line also subsided outside the building, causing the water line within the building to rise and press against the ceiling and to leak. The water line was forced against the top of the entry hole into the building. In November 1980, a depth micrometer was installed on the water line to measure its movement in relation to the ceiling in the building, and the District excavated the water line outside the building and supported the water service line under the sidewalk. The water line within the building dropped temporarily, but rose again later.

On November 6, 1980, L'Enfant Plaza Properties, Inc., filed a complaint against WMATA and the District of Columbia, seeking monetary damages and permanent injunctive relief. Accompanying the complaint were applications for a temporary restraining order and preliminary injunction. Both defendants requested a trial by jury in their answers. The preliminary and permanent injunction hearings were consolidated in a proceeding before the trial court from March 5 through March 11, 1981. In April the court entered findings of fact and conclusions of law and ordered defendants, appellants herein, to undertake immediate remedial measures to prevent further subsidence of the water service line.

II

The trial court found that the subsidence of the water service line was the direct and

proximate result of improper compacting during the backfilling stage of the excavation. In addition, the court concluded that the condition of the water line presented an imminent danger of irreparable harm. It is appellants' position that both of these findings are manifestly wrong.

Applying the doctrine of *res ipsa loquitur*, the trial court held that the testimony of appellee's three expert witnesses formed a basis for a finding of negligence and causation. *Res ipsa loquitur* permits an inference of negligence from the mere happening of an occurrence. *Quin v. George Washington University*, D.C.App., 407 A.2d 580 (1979); *Loketch v. Capital Transit Co.*, 101 U.S.App.D.C. 287, 248 F.2d 609 (1957). Each of appellee's experts, according to the trial court, testified to the effect that the kind of subsidence which occurred near appellee's property *ordinarily* does *not* occur absent the failure to backfill an excavation properly. Attacking the testimony of each expert witness, appellants contend that the trial court was incorrect in finding *res ipsa loquitur* applicable.

■ Appellants argue that the testimony of witness Charles F. Williams is not the type of opinion justifying application of *res ipsa loquitur* because that witness did not in fact testify that the subsidence would probably not have occurred absent negligence. Having reviewed Williams' testimony, we must reject this contention. His testimony indicates his opinion that improper compacting was the likely cause of the subsidence and that a proper backfill usually prevents such a condition.[1]

■ According to appellants, the testimony of another of appellee's experts, Sholom M. Shefferman, a mechanical engineer, should not have been considered by the court because he did not have the appropriate expertise to assess causation. The trial court, however, upon questioning this witness, found that he had 30 years of practical experience working as an engineer and had dealt with situations involving pipes settling many times. The record reflects that Shefferman had previously examined and diagnosed the effect of the ground environment on underground pipes and their support. The trial court's decision to qualify a witness as an expert is not to be reversed absent a clear showing of abuse of discretion. *Waggaman v. Forstmann*, D.C.App., 217 A.2d 310, 311 (1966). Finding no abuse of discretion, we conclude that Shefferman was a properly qualified witness whose opinion was an appropriate basis for application of *res ipsa loquitur.*

Appellants contend that the testimony of the third expert, Sol S. Cooper, is not credible. Our review of the record persuades us that Cooper's opinion that the cause of subsidence was improper backfill was supported by sound reasons. Appellants' argument in effect asks us to draw different inferences from this witness' testimony and from other evidence presented at trial. On this record, we cannot conclude that the trial court's interpretation of the evidence

---

1. On direct examination Williams testified as follows:

Q: In the ordinary course of things, if a roadway is excavated . . . and then backfilled with a proper kind of backfill material and properly compacted, as the backfill is being put in, and then blacktopped over, does that ordinarily prevent the subsidence?

A: *I would say in general, yes*, whereby I would have to qualify my answer.

If we are talking about a deep lift backfill of which, let's say you have not had that much experience aside from its being related to the subway, *I would feel that there would be a chance of marginal settlement which could be acceptable for a deep lift backfill.* Under what I consider to be my assumption that *if we are*, let's say, if we are going at something *in excess of 20 or 30 feet of fill, I assume that we would expect that there would be zero settlement* right across the line. . . . I expect zero settlement at any point in time and in my terminology with regard to the acceptance of settlement, *I probably would expect some marginal settlement which would be acceptable which would not show up* and which would— wherein the roadway or sidewalk area would maintain a neat crown and neat profile. That would be totally acceptable to me.

Q: One more question—

The Court: *In other words, it wouldn't be visible subsidence?*

The Witness: *That is correct.*

[Record at 240–42; (emphasis supplied).]

is clearly erroneous. *See District of Columbia v. Burlington Apartment House Co.,* D.C.App., 375 A.2d 1052, 1055 (1977) (en banc).

▪▪ In the alternative, appellants contend that, even if the testimony of appellee's expert witnesses is sufficient to support the application of *res ipsa loquitur,* there was conflicting expert testimony by reason of the witness presented by appellants; therefore, such *conflicting* expert testimony defeats applicability of the doctrine under *Quin v. George Washington University, supra.* In *Quin,* however, we held that *res ipsa loquitur* did not apply where two *equally plausible* conclusions could be deduced from the testimony. The existence of conflicting expert testimony in itself does not render the doctrine inapplicable. The trial court, having heard and properly considered the testimony of the three expert witnesses of appellee and appellants' sole expert, concluded that improper backfilling could be inferred from the subsidence of the soil and water line. Thus we find no error in the application of *res ipsa loquitur* and consequently no error in the court's finding that negligent compacting during the backfilling stage caused the harm to appellee.

▪▪ The trial court also concluded that appellee's water line was in imminent danger of being crushed either by contracting the inside ceiling of the L'Enfant East Building or by pressure at the entry hole into the building. Appellants argue that this finding is clearly erroneous. The record reflects ample evidence supporting the finding that this damage could occur. The court's conclusion is supported by evidence that leakage from the pipe had occurred and that movement of the line had necessitated the chipping out of a portion of the building's ceiling. Furthermore, an expert witness testified that the water line could fracture at any time. On this record a

finding of the imminence of irreparable harm is not clearly erroneous and therefore may not be reversed. *See District of Columbia v. Burlington Apartment House Co., supra.*

### III

▪▪ Appellants next contend that any negligence in the excavation work was attributable to the independent contractor who performed the work and that this negligence cannot be imputed to appellant WMATA. The general rule is that an individual or corporation is not liable for injuries resulting from the work of an independent contractor. *See Washington Air Compressor Rental Co. v. National Union Insurance Co.,* D.C.Mun.App., 165 A.2d 482 (1960). The trial court found that this case is subject to three exceptions to the general rule.[2] Appellants claim that no exception applies here.

▪▪ In our view, the trial court properly concluded that WMATA is liable for the negligence of its independent contractor because the activity engaged in was inherently dangerous and unusually hazardous. Whether a particular kind of work is inherently dangerous is essentially a relative determination based upon the facts of the particular case. *See Vale v. Bonnett,* 89 U.S.App.D.C. 116, 121, 191 F.2d 334, 339 (1951). *See generally* 41 AM.JUR.2D *Independent Contractor* § 41 (1968). The independent contractor hired by WMATA performed a deep open-cut excavation directly under the city's water main and appellee's water line, within 15 feet of appellee's large building. This work required that the water lines be temporarily suspended over the excavation and demanded substantial compaction subsequent to the subway construction. These facts present an inherent danger of injury to the water lines, the area land surface, and the nearby building. We

---

**2.** The trial court concluded that the work undertaken was an inherently dangerous activity, that this activity created a nuisance, and further, that WMATA is liable under the principles established in *Hanna v. Fletcher,* 97 U.S. App.D.C. 310, 231 F.2d 469, *cert. denied sub nom. Gichner Iron Works, Inc. v. Hanna,* 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1501 (1956). Because of our conclusion, *infra,* that WMATA is subject to the "inherently dangerous" exception, it is not necessary for us to address the applicability of the other two exceptions.

conclude, therefore, that the trial court's factual determination that the excavation was inherently dangerous was supported by substantial evidence in the record and that the application of this exception to subject WMATA to liability was proper. *See Lindler v. District of Columbia*, 164 U.S.App. D.C. 35, 502 F.2d 495 (1974) (installation of a water main found inherently dangerous).

## IV

■ We must now address the question of the liability of the District of Columbia. Appellants maintain that there is no proper basis for imposition of liability. Appellants do not challenge the fact that the District has a statutory obligation to repair and maintain water service lines pursuant to D.C.Code 1981, § 6–405(b). Appellants argue, however, that no repairs need to be done to appellee's water line because the problems suffered by appellee are due to the soils in which the line lies. We find this argument meritless. The trial court, as noted above, found that the water line was in imminent danger of being crushed. It is apparent that, although the root of the problem is the loose soil, repair to the line would be necessary should the movement of the line continue. Furthermore, we consider proper maintenance of a water line to include attention to an undue subsidence of that line such as that present here. Accordingly, we find § 6–405(b) an appropriate basis of liability under the present circumstances.[3]

3. The trial court also asserted as a basis of the District of Columbia's liability that the District affirmatively undertook to monitor backfilling and permitted improper backfilling. Because of the statutory basis for liability, we deem it unnecessary to address this potential basis.

4. Both appellants demanded a jury trial in their answers to appellee's complaint.

5. The following colloquy occurred at the status hearing:
   THE COURT: This case was set today for a hearing on a preliminary injunction.
   \* \* \* \* \* \*
   Unfortunately I will not be able to reach this case. I have read the papers over the week-

## V

■ Finally, appellants argue that the trial court's consolidation of the hearing on the preliminary injunction with a trial on the merits denied them the right to a jury trial. It is well-settled that when an action involves claims for equitable and legal relief and there has been a timely demand for a jury trial, as here,[4] the parties are entitled to a jury trial as to facts that are common to the claims for injunctive relief and damages. *E.g., Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Thus, where monetary damages, as well as the equitable remedies of preliminary and permanent injunction are sought, a party who preserves the right to jury trial is entitled to a trifurcated proceeding. The court must first hold a hearing on the preliminary injunction, then try the legal issues before a jury, and finally hold a bench hearing on the permanent injunction. *Beacon Theatres, Inc. v. Westover, supra; Southland Reship, Inc. v. Flegel*, 534 F.2d 639, 644 (5th Cir. 1976). The record before us, however, demonstrates that appellants waived their right to a jury trial when they expressly agreed to the consolidation of the hearing on the preliminary injunction with the trial on the merits.

The court first demonstrated its intent to consolidate the preliminary and permanent hearings at a status hearing on February 23, 1981.[5] At that time appellants' counsel

end, including the Affidavits. I would like to share with you some thoughts. Although this matter is nominally—the motion is nominally denominated a motion for preliminary injunction, bearing in mind that the principal relief requested is a repair of the complained of condition, and bearing in mind that the preliminary injunction requested is an affirmative injunction, it seems to me, gentlemen, that the preliminary injunction trial will be the—if not the whole ball of wax, a very large part of it. Am I correct?
   MR. KAPLAN: I believe that's correct, Your Honor.
   THE COURT: Mr. Scott?
   MR. SCOTT [Appellants' Counsel]: I have to conclude you're correct.

agreed with the trial court that a hearing on the preliminary injunction would, in effect, be a trial on the merits. Appellants raised no objection to consolidation during the intervening ten days between the status hearing and trial. At commencement of trial on March 5, 1981, the court conducted an inquiry which made clear appellants' agreement to a consolidated bench trial:

> THE COURT: This is a bench trial. It is before us nominally on a motion for preliminary injunction. I understand Mr. Roth, from our last status hearing, ... on February 23rd, it was at that time Mr. Scott was present, that it was agreed insofar as injunctive relief was concerned that the motion before us was in point of fact the motion sought for on the merits. That is, it was an affirmative injunction which commanded the accomplishment of certain remedial measures.
>
> MR. ROTH: Well, the initial action, as I understand it, was for some damages that they allege they incurred in anticipation of the pipe bursting. I believe that was the initial claim. This is an affirmative injunction to get us to do something with the street.
>
> THE COURT: And if I grant the motion, then that will be the ultimate injunctive relief requested.
>
> MR. ROTH: Yes, Sir.
>
> THE COURT: So can we agree that for all practical purposes this is the permanent injunction?
>
> MR. KAPLAN: I think that is fair to say, Your Honor.
>
> THE COURT: Mr. Roth?
>
> MR. ROTH: Yes, Your Honor.
>
> [Supp. Record No. 3 at 2–3.]

Such consolidation is explicitly authorized by Super.Ct.Civ.R. 65(a)(2), which allows the trial judge the discretion to order consolidation on his own motion or that of a party. See generally 7 MOORE'S FEDERAL PRACTICE ¶ 65.04[4], at 65 (2d ed. 1980). The rule provides that it is to be "so construed and applied as to save the parties the rights they may have to trial by jury." Super.Ct. Civ.R. 65(a)(2). Appellants, however, did not raise any questions regarding the consolidated proceedings and their jury trial right until the conclusion of the first day of trial by the court. At that point, appellants' counsel acknowledged that his co-counsel "had agreed this would be the trial on the merits as to the permanent injunction," but contended that he did not believe that "he fully meant that." [Supp. Record No. 3 at 32.]

We find that this delayed assertion after trial before the court, including appellee's opening statement and the direct and cross-examination of a witness had commenced, was insufficient to negate appellants' earlier waiver of the jury trial right. Appellants' counsel had not merely acquiesced, but had expressly agreed to the consolidated bench trial as early as February 23; there was ample time for counsel to determine the effect of this agreement on the right to jury trial and to object to a consolidation before the trial on the merits proceeded. See Southland Reship, Inc. v. Flegel, supra at 644. Finding a clear waiver on this record, we conclude that appellants were not denied their jury trial right.[6]

Accordingly, the judgment of the trial court is

*Affirmed.*

---

THE COURT: Now, I have read the Affidavits and the matter in my view, is not susceptible of determination on Affidavits. I'll have to hear testimony. [Supp. Record at 2–3.]

6. Our holding herein does not preclude a jury trial on the issue of damages.