Denny JENKINS, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 82–1082.

United States District Court, District of Columbia.

April 28, 1983.

Civ.P. 41(b), plaintiff having completed the presentation of his case at trial. After careful consideration, the Court has decided to grant defendant's motion under Rule 41(b). Because the Court has decided to grant that motion, it need not reach defendant's other motion, for summary judgment. The findings of fact and conclusions of law supporting the Court's decision are set forth herein.

## I. PLAINTIFF HAS NOT ESTABLISHED DEFENDANT'S NEGLIGENCE FOR HIS FALL IN THE ADMITTING AREA.

Plaintiff has alleged several incidents of negligence by defendant and injury corresponding to each of those incidents. Plaintiff alleges first that he sustained an injury to his chin that required stitches as a result of negligence by defendant that occurred while he was awaiting admission to St. Elizabeth's Hospital on June 15, 1980. On that day, plaintiff, who was in a psychotic state, was brought to the Hospital by the Metropolitan Police, and, upon arrival, was handcuffed to a light weight chair. After a long wait in the admitting area, plaintiff became agitated and attempted to stand up in the chair, as a result of which he fell and hit his chin. Plaintiff alleges that he incurred this injury because defendant was negligent in its supervision of him and in its choice of a restraint mechanism, namely hand restraints.

Harold Sakayan, Washington, D.C., for plaintiff.

Ann S. DuRoss, Asst. U.S. Atty. for the District of Columbia, Washington, D.C., and Ann Regan Keary, Office of the Legal Advisor to St. Elizabeth's Hospital, with whom Royce C. Lamberth, Asst. U.S. Atty., and Stanley S. Harris, U.S. Atty., Washington, D.C., were on brief, for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court on a motion by defendant for summary judgment, which was previously denied without prejudice, and a motion for dismissal under Fed.R.

As defendant contends, however, in order for plaintiff to establish negligence with respect to this incident, he must demonstrate the applicable standard of care by expert testimony. *See Haven v. Randolph,* 494 F.2d 1069 (D.C.Cir.1974). Defendant notes that the only expert testimony in the record on either supervision or restraint is that of Dr. John Syphax, who testified that the manner in which plaintiff was restrained in the central admitting area did *not* fall below the applicable standard of care. Plaintiff counters that although no expert has articulated a contrary view, the proper standard of care can be deduced

from the conduct of Howard University, where plaintiff was handled on the very day he was taken to St. Elizabeth's. Plaintiff, however, has cited no authority to support its view that a standard of care can be established by an alternative approach to treatment at a different hospital. Moreover, as defendant points out, while plaintiff was at the other hospital, he was at one point rolled in a wheelchair with only his hands tied, treatment not at all unlike that which he received in the admitting area of St. Elizabeth's. Accordingly, the Court finds that plaintiff has not shown by a preponderance of the evidence that defendant was negligent with respect to the fall in central admitting.

## II. PLAINTIFF HAS NOT ESTABLISHED DEFENDANT'S NEGLIGENCE FOR HIS FALL IN THE WARD.

Plaintiff alleges next that he sustained injury to his face and hands when, on June 16, 1983, he fell on his head in the St. Elizabeth's ward to which he was assigned. This fall, he claims, was due to the negligence of defendant in supervising him and in administering the drug Haldol to him on that morning. In support of his claim, he points to the testimony of Dr. Syphax that it would have been inappropriate to give him Haldol on the morning of June 16 if he had been quietly sleeping the night before. He also points to a similar statement at deposition by Dr. Alan Heine, and to Dr. Heine's further statement that Haldol can cause a patient to become unsteady on his feet.

■ Once again, defendant counters by pointing out that plaintiff has introduced no expert testimony on lack of supervision with respect to this fall. As to the doctors' statements on the administration of Haldol to plaintiff, they are premised on the assumption that plaintiff was quietly sleeping the night before, whereas plaintiff himself testified that he was extremely anxious during that night. More importantly, plaintiff has produced no testimony that the administration of Haldol to plaintiff on

the morning of June 16 was in fact the cause of his fall in the ward. Plaintiff himself remembers nothing of the incident, and Dr. Heine's statements that Haldol could cause unsteadiness were premised on two medical contingencies that were not present here. Accordingly, the Court finds that plaintiff has not shown by a preponderance of the evidence that defendant was negligent with respect to the fall in the ward.

## III. PLAINTIFF HAS NOT ESTABLISHED DEFENDANT'S NEGLIGENCE FOR HIS NECK FRACTURE.

The most significant injury which plaintiff claims is a fracture to the "C–1" vertebra in his neck, an injury which he alleges was incurred in a wheelchair accident at St. Elizabeth's. Specifically, plaintiff claims that he was strapped into a wheelchair on the morning of June 16, 1980 and pushed down a covered walkway by two Hospital attendants. He testified that while the wheelchair was moving quickly down an incline, it hit a protrusion in the walkway, and flipped completely over. Plaintiff stated that the top right quadrant of his head hit the ground as the chair flipped over, and he maintains that he thus sustained the fracture to his neck.

■ In response, defendant argues first that plaintiff's testimony is inherently incredible. As was revealed on cross examination, plaintiff on prior occasions gave substantially different accounts of how he incurred the neck fracture. At one time, he said he incurred it when he rammed his head against a door, while under the influence of PCP. At another time, he said he incurred the fracture while doing exercises at St. Elizabeth's. Plaintiff has also given varying accounts of when the alleged wheelchair accident itself occurred, and he testified, somewhat incredibly, that he said nothing to the two Hospital attendants after the accident occurred. It is also clear from the record that plaintiff was in a psychotic state during his first few days at the Hospital, and he testified himself that

his memory of the events that occurred is somewhat hazy. In light of all of these things, the Court must agree with defendant that plaintiff's otherwise unsupported story about this wheelchair accident is incredible, and find that this accident did not occur.

To be sure, even if the Court were to find that the accident did occur (which it does not), the Court has no expert evidence from plaintiff establishing that the accident could or did cause the type of neck fracture plaintiff incurred. Plaintiff proposed to put on an expert witness to this effect prior to the close of his case, but failed to do so at the time scheduled for this testimony. Instead, plaintiff merely introduced several written articles on the subject of neck fractures, which defendant had already rebutted prior to trial with an affidavit from Dr. Bruce Ammerman. Also critical for plaintiff on the question of causation was his own testimony as to the point of impact on his head. Plaintiff's trial testimony on this was, like his testimony about the entire wheelchair incident, at variance with prior statements he had made. Without proof of the critical element of causation, there can be no liability for negligence. *Logsdon v. Baker,* 517 F.2d 174 (D.C.Cir.1975) (per curiam); *Hicks v. United States,* 511 F.2d 407 (D.C.Cir.1975). Thus, the Court finds that plaintiff has not shown by a preponderance of the evidence that the accident he alleges to have occurred was the cause of the fracture to his neck.

## IV. PLAINTIFF CANNOT RECOVER FOR HIS NECK FRACTURE UNDER THE DOCTRINE OF RES IPSA LOQUITUR.

■ Plaintiff has also attempted to demonstrate defendant's responsibility for his neck fracture through the doctrine of *res ipsa loquitur.* Under this doctrine, plaintiff must show that his injury (1) ordinarily would not have occurred in the absence of some negligence, (2) was caused by an agency or instrumentality within the exclusive control of defendant, and (3) is not due to any voluntary action or contribution on his

part. *Quin v. George Washington University,* 407 A.2d 580 (D.C.App.1979). Plaintiff contends that his neck fracture ordinarily would not have occurred in the absence of some negligence, that he was within the exclusive control of defendant at the time it occurred, and that there is no evidence it was caused by his own voluntary action. In support of his contention that the injury occurred while he was at St. Elizabeth's, plaintiff relies on his Hospital records, which reflect none of the symptoms of a neck fracture prior to the morning of June 16, 1980, yet repeated complaints of those symptoms at all times thereafter.

■ Defendant retorts that plaintiff has not persuasively established the time and place of the injury. It notes that plaintiff offered to present expert testimony that the injury occurred at St. Elizabeth's, but then never produced the expert. If the time and place of the injury are not established, however, plaintiff cannot show that the injury occurred while he was in defendant's exclusive control. It may have occurred before he came to the Hospital, perhaps as much as two months before, when he rammed his head into a door and was then beaten by police. Defendant also correctly notes that plaintiff needs expert testimony to establish that his fracture would not have occurred in the absence of negligence, since the fracture was of a somewhat rare kind, not clearly within lay ken. *See Quin, supra.* Third, it is not completely clear that plaintiff did not contribute to the injury, inasmuch as he stated at one time that he incurred the injury while doing exercises at St. Elizabeth's. Accordingly, the Court finds that plaintiff has not shown that he is entitled to relief under the doctrine of *res ipsa loquitur.*

## V. PLAINTIFF HAS NOT ESTABLISHED A NEGLIGENT FAILURE TO DIAGNOSE BY DEFENDANT.

Finally, plaintiff alleges that defendant negligently failed to diagnose his neck fracture during the course of his confinement at St. Elizabeth's, thus compounding the injury to his neck. He alleges that he re-

peatedly complained of all the symptoms of such a fracture starting on the afternoon of June 16, 1980 and continuing until he was discharged from the Hospital. Nonetheless, his fracture was not properly diagnosed until he went to the Washington Hospital Center on June 30, 1980.

■ Once again, defendant counters that plaintiff has not established the applicable standard of care for negligent diagnosis through the necessary expert testimony. *See Haven, supra.* Plaintiff offered to do so, but then did not. Defendant also reiterates that the time of the injury has not been persuasively established. Moreover, there was testimony that the symptoms plaintiff exhibited at St. Elizabeth's were explainable as side effects from the drug Haldol, rather than simply and unequivocably suggesting neck fracture. Accordingly, the Court finds that plaintiff has failed to show by a preponderance of the evidence that defendant negligently failed to diagnose a neck fracture.

## VI. CONCLUSION.

For all of the foregoing reasons, the Court shall enter an Order, of even date herewith, granting defendant's motion to dismiss under Fed.R.Civ.P. 41(b).