Mary C. GUBBINS, et al., Appellants,

v.

Susan B. HURSON, M.D.,
et al., Appellees.

No. 07–CV–1165.

District of Columbia Court of Appeals.

Argued May 15, 2009.

Decided Jan. 21, 2010.

---

Barry J. Nace, Washington, for appellants.

Steven A. Hamilton, with whom Karen S. Karlin was on the brief, for appellee Susan B. Hurson, M.D.

R. Harrison Pledger, Jr., for Ok–Young Kim, as personal representative of the estate of Jae–Joo Kim, M.D., and Northwest Anesthesiology Group. P.C.

Before RUIZ and THOMPSON, Associate Judges, and FARRELL, Senior Judge.

PER CURIAM:

Appellants sued the appellee-doctors for medical malpractice, alleging that appellant Gubbins had suffered nerve damage as a result of flawed treatment she received during otherwise routine surgery at Sibley Memorial Hospital.[1] Appellants asserted liability based on traditional negligence and *res ipsa loquitur.* The jury found for the defendants on both allegations.[2] On appeal, appellants claim that the trial judge's instructions and evidentiary rulings were in error. We affirm.

## I.

▮ Appellants first argue that the trial judge erred in giving the jury instruction on "bad result" of treatment. *See* Standard Civil Jury Instructions for the District of Columbia, No. 9.06 (2009 rev.

---

1. Sibley Memorial Hospital was also a named defendant, but is not a party to this appeal.

2. A previous judgment for the defendants was reversed in *Gubbins v. Hurson,* 885 A.2d 269 (D.C.2005) (*Gubbins I*), resulting in this retrial.

ed.). We find no error in the giving of the instruction, and certainly none that warrants reversal. The instruction, in its standard form, informs the jury that a doctor "is not negligent simply because [his][her] efforts are not successful," [3] but that, while "[u]nsatisfactory results from treatment or care alone do not determine whether the defendant ... was negligent in treating the plaintiff, ... if the doctor's performance fell below the standard of care and thereby proximately caused the patient's injuries, then the doctor was negligent." *Id.* As we recently pointed out, the instruction "reflects a principle established by rulings of this court." *Aikman v. Kanda,* 975 A.2d 152, 156 (D.C.2009). We reject appellants' argument that the instruction is improper unless there was "an express warranty or a claim of a guaranteed result." Nor does an instruction telling the jury that an "unsatisfactory result[ ] ... *alone* " (emphasis added) does not yield negligence imply that an unsatisfactory result may not, in appellants' words, be "even evidence of negligence."

■ Appellants also argue that the instruction undermined their case for liability based on *res ipsa loquitur,* but that is not so. First, in the oral instructions on *res ipsa,* after telling the jury that it could "conclude from the fact that an injury occurred that a [d]efendant was negligent" if certain then-specified conditions were met, the judge added that the bad-result instruction given earlier "does not apply in regard to [p]laintiff[s'] theory [of] *res ipsa loquitur.*" [4] Moreover, the *res ipsa* instruction as a whole, as well as the jury verdict form, carefully focused the jury's attention on the findings necessary to make out that theory, including when, and when not, "the ... occurrence of an injury" may be sufficient to prove negligence. On this record, we have no reason to conclude that the bad-result instruction prejudiced appellants' case for either traditional negligence or *res ipsa* liability.[5]

## II.

■ Appellants argue that the trial court erred in admitting the testimony of appellees' experts, Dr. Kelly and Dr. Anderson. Both testified that Ms. Gubbins's injury was due to a chemical reaction resulting from the epidural she received. According to Dr. Anderson, "Mrs. Gubbins'[s] nerves were sensitive to those particular chemicals and ... it caused some damage.... [I]t [is] not unusual for human beings to be sometimes very sensitive to medi[c]ations that other human beings aren't ...." —an opinion he said was based on his "education, knowledge[,] and experience." Dr. Kelly held a similar opinion, which he said was based on "a combination of experience in previous

---

3. Here, the trial judge instructed the jury that "[a] doctor is not negligent simply because there was a bad result." The difference between this instruction and the form instruction, quoted above, is not significant.

4. This statement does not appear in the written instruction the jury also received.

5. The standard bad-result instruction concludes with a sentence pointing out that in circumstances where the defendant-doctor was negligent "it is no defense ... that the doctor did the best that [he][she] could and that those efforts simply were not successful."

Standard Civil Jury Instructions, *supra,* No. 9.06. The judge did not include this sentence in the instruction given, apparently accepting the defendants' contention that it had no place because "having done their best" was not their defense in the case. Merely having "tried one's best," however, is *never* a defense to negligence, and if the bad-result instruction is otherwise unobjectionable in a case, there is no reason to omit the final sentence. Nonetheless, we can find no more prejudice to the appellants in this omission than in the judge's decision to give the bad-result instruction in the first place.

cases like this, [and] reviewing the literature, that sort of thing." Appellants argue that this testimony was inadmissible because it was based only on "prior experience" and not on "scientific methodology." We have held, however, that an expert may base his or her opinion on clinical judgment and specialized knowledge. *See Drevenak v. Abendschein,* 773 A.2d 396, 418–19 (2001). "[T]he admission of expert testimony is committed to the broad discretion of the trial court," *Green v. United States,* 718 A.2d 1042, 1050 (D.C.1998), and it cannot be said that such discretion was abused here.

## III.

■ Appellants contend that having allowed the testimony by the defendants' experts that Ms. Gubbins may have been "susceptible" to an injury that was otherwise unexplainable—and certainly not explainable by negligence—the trial judge erred in refusing to instruct the jury, in accordance with standard civil instruction No. 13.08,[6] on the theory of "special susceptibility."

Appellees counter that no prejudice to appellants flowed from the refusal to give the instruction because the special susceptibility theory relates only to a plaintiff's damages, and the jury never reached that issue; instead it found no liability on the part of either defendant. Support for appellees' position comes from authorities that view a plaintiff's special condition or susceptibility as merely *increasing* the liability—in terms of damages—of a defendant whose negligence has injured the plaintiff. An illustration is Judge Leventhal's opinion for the court in *Bourne v. Washburn,* 142 U.S.App. D.C. 332, 441 F.2d 1022 (1971), which found prejudicial error in the trial court's instruction on damages that effectively barred recovery for "aggravation" of a pre-existing condition. "[A] person who has received physical bodily injury by the wrongful act of another," Judge Leventhal wrote (addressing the facts of that case),

> can recover for pains resulting from that injury that ... are not due to organic ailment but [rather] are psychosomatic in origin, and are due to the impact of the injury upon or in aggravation of a pre-existing neurotic or psychic weakness.

*Id.* at 336, 441 F.2d at 1026. *See also* RESTATEMENT (SECOND) OF TORTS § 461 (1965) ("A negligent actor must bear the risk that his liability will be *increased* by reason of the actual physical condition of the other toward whom his act is negligent.") (emphasis added); Standard Civil Jury Instructions, *supra,* Nos. 13.01–13.12 (including instruction No. 13.08 among those instructions related to "Personal Injury Damages").

But, while these authorities appear to view a plaintiff's susceptibility as related only to the issue of (augmented) damages, there is case authority holding that a requested instruction on that theory, when supported by evidence, must be given in regard to the issue of proximate causation, a component of liability. *See, e.g., Primm v. U.S. Fid. & Guar. Ins. Corp.,* 324 Ark. 409, 922 S.W.2d 319 (1996); *Benn v.*

---

6. The standard instruction provides:
   If the plaintiff, because of a prior injury, disability or other condition, was more likely to suffer injury because of the defendant's negligence than a normal person would, then the defendant is responsible for that injury. A defendant may not avoid responsibility for his or her negligent actions by showing that the injury would have been less serious if it had happened to someone else.
   Standard Civil Jury Instructions, *supra,* No. 13.08.

*Thomas,* 512 N.W.2d 537 (Iowa 1994).[7] These cases, however, do not help appellants. First, concerning their allegation of traditional negligence, requiring proof both of breach of the standard of care and causation, the jury did not reach causation because it found no deviation from the standard of care by either defendant—an issue on which special susceptibility sheds no light in this case where there is no allegation that the doctors knew or should have known of that condition. Second, no case we are aware of linking susceptibility to causation has done so as relates to appellants' alternative liability theory, *res ipsa loquitur.* And this makes sense. Allowing a jury to consider the plaintiff's susceptibility to injury to find the causation required for *res ipsa* liability would contradict the basic rule of that doctrine that the cause of the injury must have been within "the exclusive control" of the defendant. *See Gubbins I,* 885 A.2d at 282 (quoting *Quin v. George Washington Univ.,* 407 A.2d 580, 583 (D.C.1979)). That decidedly cannot be the case if a susceptibility unique to the plaintiff, and neither known to nor within the control of the defendant, has contributed to bringing about the injury.[8] *See, e.g., Clark v. Medtronic, Inc.,* 572 F.Supp.2d 1090, 1095 (D.Minn.2008) (*res ipsa* liability incompatible with fact that injury "was possibly caused by plaintiff's unique physiology").

Accordingly, appellants can claim no legally cognizable prejudice from the judge's refusal to give the susceptibility instruction.[9]

*Affirmed.*

</div>

7. In *Primm,* for example, the court wrote: "[W]e are not convinced that [the proffered special susceptibility instruction] is merely a damage instruction. Rather, it embraces definite aspects of proximate causation when it discusses aggravation of an existing condition and predisposition of the plaintiff to injury to a greater extent than another person." *Primm,* 922 S.W.2d at 321.

8. This is not to say a defendant is not responsible for all of a plaintiff's resultant injuries once *res ipsa* liability is found, even taking account of susceptibility; but, as indicated, the jury never reached the issue of damages here.

9. We reject appellants' remaining argument that the *res ipsa loquitur* instruction itself was erroneous or confusing as given—an argument resting on an apparent mistranscription of the oral instruction that is not reflected in the written instructions the jury also had.