Joyce PRIMM, et al. *v*. U.S. FIDELITY & GUARANTY
INSURANCE CORPORATION

96-101                                   922 S.W.2d 319

Supreme Court of Arkansas
Opinion delivered May 13, 1996

*Phillip J. Milligan*, for appellants.

*Warner, Smith & Harris, P.L.C.*, by: *Joel D. Johnson*, for appellee.

ROBERT L. BROWN, Justice. This case is an appeal from a defendant's verdict in favor of appellee United States Fidelity & Guaranty Insurance Company (USF&G), the insurance carrier for the Van Buren School District. The appellant, Joyce Primm (formerly Joyce Suggs), argues that the trial court erred in refusing to give two instructions and further erred in permitting the school principal to sit at the counsel table with USF&G's counsel. Because we find merit in the failure to give an instruction on the existing condition of Primm's son, we reverse and remand for a new trial.

Jerrod Suggs, a six-year old at the time of his accident, was diagnosed with spina bifida at birth. As a result of his condition, he

is paralyzed from the waist down and is confined to a wheel-chair. His bones are osteoporotic and brittle, thereby making them susceptible to breakage. In 1993, he attended his second year in kindergarten at J.J. Izard Elementary School, which is part of the Van Buren public school system. At the time of the accident in question, Jerrod's kindergarten teacher, Jean Perkins, knew of his need for special treatment. She was told that he was to be given the same supervision as her other students. Among other things, his condition made him susceptible to colds, and on cold days, he stayed indoors during recess.

On November 1, 1993, Jerrod was forced to stay inside during the afternoon recess due to cold weather. Jean Perkins stayed inside with him. When recess was over, she left the classroom and entered the hallway to supervise the return of her other students, a procedure that normally took her about five minutes. On this particular day, she left the door to the classroom open. A few minutes after Ms. Perkins left the classroom, one of Jerrod's classmates began pushing him around the room in his wheelchair. The chair tipped over, and Jerrod fell to the floor. A school janitor was in the restroom connected to the classroom at the time of the accident and notified Ms. Perkins. When she examined him, Jerrod was discombobulated and had a red mark on his face, but he appeared not to be hurt. Jerrod's bus driver arrived moments later, and it was decided that the bus driver would take Jerrod home and tell Jerrod's mother, Joyce Primm, about the accident. This was done. Jerrod was absent from school for three days following the accident and returned to school on November 5, 1993.

On November 7, 1993, Jerrod's mother noticed a deformity in Jerrod's left thigh and took him to the emergency room of Sparks Regional Medical Center in Fort Smith. X-rays were taken, and it developed that Jerrod had a fracture of his left femur. In the ensuing operation, a traction pin was surgically inserted into the bone just above the knee so that weights could be attached to the pin to keep the bones aligned during the healing process. Jerrod was then placed in a "spica cast," which started at his waist and extended down both legs.

Joyce Primm subsequently filed a direct action lawsuit against USF&G as the liability insurance carrier for the Van Buren School District #42 pursuant to Ark. Code Ann. § 23-79-210 (Repl. 1992). The complaint alleged that Jerrod's injuries were caused by

the negligence of the agents and employees of the school district (1) in failing to provide a proper, safe environment for an elementary student, (2) in allowing elementary school age children to remain unattended in a classroom, (3) in failing to provide reasonable supervision and precautions for the safety of elementary students, and (4) in failing to provide reasonable supervision and precautions for the safety of handicapped students while on the premises of J.J. Izard Elementary School. A trial was held, and the jury returned a verdict in favor of USF&G.

Joyce Primm's first argument pertains to the trial court's refusal to give a jury instruction on the effect of Jerrod's preexisting condition on his injuries. In arguing her case to the trial court, Primm's counsel made the following record before closing arguments on the court's refusal to give certain instructions:

> Judge, we tendered Instructions that the Court refused. Particularly, the Court refused a tendered Instruction instructing the jury that, in essence, you take the plaintiff as you find them, and that because a plaintiff is more predisposed to injury than another plaintiff, that they cannot basically, they have to take the plaintiff as they find them. Clearly, A.M.I. on the damages, accounts for that. There was the A.M.I. damages Instruction I tendered with three (3) elements; first, the nature, extent and duration of any injury, and then the added paragraph, "Because of Jerrod's condition, in this regard you should consider [the] full extent of any injury sustained, even though the degree of injury is found by you to have proximately resulted from the aggravation of the condition that already existed and predisposed Jerrod to injury to a greater extent than another person," and then the reasonable expenses, and Third, "Pain and suffering and mental anguish." The Court allowed the Second and Third, and it disallowed the First, and I think clearly that was established by the evidence, it should have been granted.

The quoted language to the trial court was taken from AMI 2203 entitled "Measure of Damages — Aggravation of Preexisting Condition."

There is, initially, the procedural argument raised by USF&G. Though Primm abstracts a requested instruction on this point with

the three elements described above and shows it marked "refused," a proffered instruction in writing with these three elements is not contained in the record. What is contained in the record is an instruction on two of the elements — reasonable expense of medical care and pain and suffering — which was given. The quoted language above regarding the aggravation of a preexisting condition, which is Arkansas Model Instruction 2203, was refused by the trial court.

■ We conclude that the record evidences a proffer of AMI 2203. It is clear from the statement of Primm's counsel quoted above that he had tendered an instruction to the court which was refused. When he made his record on the rejection, he read into the record the rejected instruction — AMI 2203. Under these circumstances, that was sufficient.

Turning to the merits, there was ample testimony before the jury that Jerrod Suggs qualified as an "eggshell plaintiff," that is, one who was susceptible to enhanced injury by virtue of an existing condition. Dr. William Sherrill, Jr., was the treating orthopaedic surgeon for Jerrod and testified by evidentiary deposition. Dr. Sherrill described Jerrod's spina bifida and osteoporosis and stated that the reason no bruising occurred on Jerrod's leg was that "it takes very minor trauma to cause fractures in these children with these very soft bones." Later, he added:

> The bones, because they are not exercised, do not bear weight and cannot be used ... are smaller ... much thinner and [have] osteoporosis in them from essentially the waist down .... The osteoporotic bones are very easy to break ... because of the thing.

As already set forth, Primm requested AMI 2203 setting forth the law that she should be compensated to the full extent of her son's injury even though the degree and extent of the injury were caused by his existing osteoporosis.

■ USF&G contends that because the jury found in its favor, this amounted to a finding of no liability. Hence, it argues, failure to give a damage instruction like AMI 2203 was at worst harmless error. Though the argument has some surface appeal, we are not convinced that AMI 2203 is merely a damage instruction. Rather, it embraces definite aspects of proximate causation when it discusses aggravation of an existing condition and predisposition of

the plaintiff to injury to a greater extent than another person.

■ The precept at issue here is known as the "eggshell plaintiff" rule. Simply stated, the rule embraces the principles that a tortfeasor must accept a plaintiff as he finds him and may not escape or reduce damages by highlighting the injured party's susceptibility to injury. *See Benn* v. *Thomas,* 512 N.W.2d 537 (Iowa 1994); *Hoffman* v. *Schafer,* 815 P.2d 971 (Colo. App. 1991) *aff'd Schafer* v. *Hoffman,* 831 P.2d 897 (1992); *Casey* v. *Fredrickson Motor Express Corp.,* 99 N.C. App. 49, 387 S.E.2d 177 (1990); *see also Prosser and Keeton on the Law of Torts* § 43, p. 292 (5th ed. 1984).

■ In *Benn* v. *Thomas, supra,* the Iowa Supreme Court confronted the same issue before this court. The plaintiff's decedent had a prior heart condition and suffered a bruised chest and fractured ankle in a car accident. He died of a heart attack following the accident. The plaintiff sought an instruction based on the "eggshell plaintiff" rule, which the trial court refused on the basis that the jury had been given the general instruction on proximate causation. The Supreme Court reversed the trial court and commented on whether the proposed instruction was one involving damages or proximate cause:

> Defendant contends that plaintiff's proposed instruction was inappropriate because it concerned damages, not proximate cause. Although the eggshell plaintiff rule has been incorporated into the Damages section of the Iowa Uniform Civil Jury Instructions, we believe it is equally a rule of proximate cause.

*Benn,* 512 N.W.2d at 539; *see also Sumpter* v. *City of Moulton,* 519 N.W.2d 427 (Iowa App. 1994). The same holds true in Arkansas.

We have had occasion to review the failure to give AMI 2203 as alleged error following a defendant's verdict. *See Simpson* v. *Hurt,* 294 Ark. 41, 740 S.W.2d 618 (1987). In *Simpson,* we concluded that it was not error to refuse the instruction, but we did so on the basis of failure of proof that a previous condition had been aggravated and not because AMI 2203 was a damage instruction which rendered the issue moot.

■ We conclude that it was error not to give AMI 2203 in this case. Jerrod had a prior bone condition that made him susceptible to injury as Dr. Sherrill testified. Predisposed to injury as he

was, he readily qualified as an "eggshell plaintiff." His susceptibility to injury is precisely what AMI 2203 contemplates, and the instruction requires compensation for the full injury sustained. Without AMI 2203, the inference or, indeed, the overt argument might prevail that the injured party's predisposition to injury was a defense for the defendant. Indeed, it was emphasized throughout this trial how brittle and susceptible to broken bones Jerrod was. Because of this, we do not agree with the trial court that the evidence supports USF&G's theory that what occurred was a new break that had nothing to do with Jerrod's osteoporosis.

■ We further note that a general verdict was rendered in this case which reads: "We the jury find for the defendant." That verdict could have been based on a finding of no liability or no damages or both. We observe that special interrogatories concerning liability or damages were not requested by USF&G. That leaves this court in the position of not knowing the basis for the jury's verdict. *See Smith* v. *Babin,* 317 Ark. 1, 875 S.W.2d 500 (1994); *Harding* v. *Smith,* 312 Ark. 537, 851 S.W.2d 427 (1993); *see also Mikel* v. *Hubbard,* 317 Ark. 125, 876 S.W.2d 558 (1994). We will not speculate on what the jury found. *See Barnes, Quinn, Flake & Anderson* v. *Rankins,* 312 Ark. 240, 848 S.W.2d 924 (1993).

■ Since this matter is remanded, we comment on the two remaining issues raised by Primm that are likely to reoccur on retrial. We find no error in the trial court's refusal to give the Presumption Instruction. This issue arose because the handwritten statement by Ms. Perkins following the accident was not made available to Primm; only a typewritten statement was. Primm contended that because the handwritten statement was not provided, all presumptions concerning what the statement contained must be made in her favor and that the jury should be instructed accordingly. While Primm correctly states the presumption principle on failure to produce discoverable material [*see Thomas* v. *Farm Bureau Ins. Co. of Arkansas,* 287 Ark. 313, 698 S.W.2d 508 (1985)], the principal of the school, Phil Hays, testified that the handwritten statement was not available and that the typewritten statement was taken from it, which was normal procedure. As we held in the *Thomas* case, the presumption only arises where the party relying on a document has possession of it and does not produce it. The proof does not support the fact that the handwritten statement was withheld from Primm.

■ Primm also urges that the trial court erred in permitting Principal Hays to sit at the counsel table as USF&G's representative. The trial court permitted this under the exception to Rule 615 regarding exclusion of witnesses for "a person whose presence is shown by a party to be essential to the presentation of his cause." Ark. R. Evid. 615(3). Primm was upset by this turn of events because of the principal's popularity in the community, and she contended, among other things, that the superintendent of the school district might have been the more appropriate representative. Primm, however, presents us with no authority to shore up her theory that the trial court abused its discretion. Accordingly, we decline to research the point or to reach the issue. *Roberts* v. *State*, 324 Ark. 68, 919 S.W.2d 192 (1996); *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

Reversed and remanded.