Jim HYDEN, Glenn Borkowski, and Hyden, Miron & Foster, PLLC. *v.* HIGHCOUCH, INC. & Donnieron LLC.

02-1172                                                                110 S.W.3d 760

Supreme Court of Arkansas
Opinion delivered June 12, 2003

*Wright, Lindsey & Jennings LLP*, by: *David M. Powell* and *Troy A. Price*, for appellants.

*Timothy O. Dudley*, for appellees.

R AY THORNTON, Justice. This is an attorney malpractice case stemming from the sale of the business of appellees, Highcouch & Donnieron LLC ("High and Couch"). Appellants, Jim Hyden and Glenn Borkowski ("Hyden and Borkowski"), argue

that the jury "was not free to award appellees money when they [High and Couch] had already gotten the value of their business" and that High and Couch suffered no damages. High and Couch respond that they suffered damages because of their attorneys' negligent handling of the sale of their business.

High and Couch decided to sell their trailer rental business and hired lawyers Hyden and Borkowski to oversee the deal. Two Oklahoma limited liability companies, Sitton Leasing LLC and Silverhorn Holdings, LLC, agreed to pay $5,500,000.00 for the land, a building, equipment, Highcouch's commercial goodwill, along with consulting from High and Couch, and a non-competition agreement. The contract itemized the value of each element of the sale: 1) $100,000 for the land, 2) $750,000 for the building, 3) $2,500,000 for the equipment, 4) $850,000 for the commercial goodwill, 5) $900,000 for consulting and 6) $500,000 for the covenant not to compete. Also at the closing, High and Couch were to receive from the buyers $150,000.00 of debt relief and $805,885.00 satisfaction of debt.

Contemporaneously with the negotiations with Sitton, another prospective purchaser, Hahn Transportation Services, Inc., ("Hahn") offered $5,500,000.00 for the properties. The itemized value of the assets described in Hahn's offer of June 16, 1998, was as follows: $3,500,000.00 for equipment, $100,000.00 for real estate, $750,000.00 for property improvements, $50,000.00 for the covenant not to compete, and $1,100,000.00 for goodwill, the company name, and leases. In negotiating with Hahn for High and Couch, Hyden and Borkowski emphasized the vital importance of a personal guaranty by the buyer as a condition of the transaction. Hyden's letter to Hahn expressed the importance of a personal guaranty in these terms:

> My clients did advise me this morning that Mr. Hahn had agreed to personal guaranties. I have advised my clients that this is a critical provision in their transaction. The sellers and their respective families are providing the bulk of the risk for the ongoing operation of the business. They should not have to do this without sharing that risk with the buyers and their respective families. This we can do with the personal guaranties of all shareholders of the buyer. We are uncertain as to who these peo-

ple may be. I also have no information whatsoever on the financial strength of the buyer or its principals. My clients have some knowledge but far short of what a commercial lender would have before making a loan of this amount. Personal guaranties in this situation are not unreasonable. My clients are entrusting their life savings to your clients.

However, in contemporaneous dealing with Sitton, Hyden and Borkowski did not insist upon a personal guaranty, expressing a view that in light of Sitton's wealth, his unwillingness to make a personal guaranty was understandable.

Presented with two *bona fide* offers of $5,500,000.00 each for the assets, High and Couch chose to accept the Sitton offer based at least in part upon the advice that the lack of a personal guaranty from Sitton was understandable.

Sitton dealt with Hyden and Borkowski and refused to execute his personal guaranty for the performance of the contract. Sitton, Hyden and Borkowski agreed that Sitton would borrow against the assets of the trailer rental business, and with that money, would pay High and Couch the $1,500,000.00 due at the closing of the deal. Sitton then executed a promissory note to Highcouch Inc, in the amount of $1,600,000 and to Donnieron LLC, in the amount of $300,000.00. Sitton filed a second mortgage to secure the promissory notes. At the closing, Sitton did not provide financing statements to allow High and Couch to perfect their financial interests, stating that Hyden and Borkowski had not finished the paperwork as the reason. The financing statements were not furnished and when Sitton defaulted on the promissory notes, High and Couch filed a lawsuit to enforce the notes, and to force the buyers to execute the documents necessary for High and Couch to perfect its security interest. In the end, the parties decided to settle that litigation for the amount of $1,400,000.00.

High and Couch then filed an action for attorney malpractice, which was eventually transferred to the Pulaski County Circuit Court. High and Couch claimed that Hyden and Borkowski were negligent in not obtaining a financing statement at the closing and provided expert testimony to that effect. High and Couch also testified that they would not have sold the business to Sitton if

they had known that the promissory notes issued by Sitton were not fully secured, and that their secondary lien on the equipment would probably not secure future payment. It was their position that Hyden and Borkowski's failure to explain the consequences of a lack of a personal guaranty and the other circumstances amounted to negligence and resulted in damages.

At trial, Hyden and Borkowski testified that High and Couch knew they had a secondary security interest to the buyers' lenders, and that High and Couch knew that only the purchasing companies would be liable on the notes. Hyden and Borkowski testified that, ultimately, High and Couch knew that their only remedy for non-performance would be reclaiming their assets that they knew were subject to prior liens. Hyden and Borkowski moved for a directed verdict based on the $4,085,000.00 that High and Couch received from the buyers as payment for the "tangible assets." They claimed that whatever their actions concerning their overseeing of the sale, that $4,085,000.00 was the most High and Couch could receive because that was the amount for the assets of the company minus the consulting and the non-compete covenant.

The jury received several jury instructions. The first instruction concerned the possible negligence of Hyden and Borkowski and whether that proximately caused damages to High and Couch. Second, the trial court instructed the jury on breach of contract and the elements they must use to determine if there was a breach. Next, the trial court instructed the jury on how to assess damages if they found Hyden and Borkowski liable. The trial court instructed the jury that

> [Y]ou must then fix the amount of money which will reasonably and fairly compensate it for the following first element of damages sustained:
>
> First, the difference between what plaintiffs received from Sitton Leasing, LLC and the fair market value of Highcouch, Inc. on or about September thirtieth.

Next, the trial court instructed the jury on damages as a result of the breach of contract:

> [Y]ou will have to determine what damages, if any, flowed from that breach or violation. You are instructed that Highcouch, Inc.

and Donnieron, LLC cannot be compensated for damages which might have been prevented by reasonable efforts. A party damaged by breach of contract is required to do everything reasonably possible to minimize its own losses and thus reduce or avoid the damages which it might otherwise recover.

The jury awarded High and Couch $850,000.00 without specifying the theory or theories upon which they based their award of damages. Hyden and Borkowski requested a judgment notwithstanding the verdict on the same grounds as that asserted for the motion for a directed verdict and the trial court denied it as well.

The issue on appeal, as articulated by Hyden and Borkowski, is that whether they acted negligently or not, High and Couch received $4,085,000.00, the amount of the value of the hard assets of the company, and thus, High and Couch could not prove evidence of damages. Therefore, they argue that the trial court was erroneous in not granting their directed-verdict motion or their renewal of that directed-verdict motion. Hyden and Borkowski claim that High and Couch cannot show that they would have been in a better position had the attorneys properly advised them.

For their sole point on appeal, Hyden and Borkowski argue that the trial court erred in refusing to grant their motions for directed verdict and judgment notwithstanding the verdict because, they contended, there was no evidence from which the jury reasonably could have concluded that appellants' actions caused appellees to suffer damages. We disagree. We hold that there is no evidence that the jury did not follow the law they were instructed upon.

■ ■ If the jury's verdict is rendered on a general verdict form, it is an indivisible entity or, in other words, a finding upon the whole case. *Tyson Foods, Inc. v. Davis*, 347 Ark. 566, 66 S.W.3d 568 (2002). Where a general jury verdict is used, this court will not speculate on what the jury found. *Primm v. U.S Fidelity Guaranty Ins. Corp.*, 324 Ark. 409, 922 S.W.2d 319 (1996). When special interrogatories concerning liability or damages are not requested, this court is left in the position of not knowing the basis for the jury's verdict, and this court will not

question nor theorize about the jury's findings. *Esry v. Carden*, 328 Ark. 153, 942 S.W.2d 846 (1997).

In *Tyson, supra*, the jury was instructed on negligence, fraud and promissory estoppel but the verdict form did not differentiate between the different types of damages that could be awarded. *Id.* We explained that the verdict form stated, "'We the jury find for Don Davis on his claim for damages and award damages against Tyson Foods, Inc. in the amount of $891,660.'" *Id.* In *Tyson*, we held:

> The evidence was presented to the jury, and the general verdict casts no light on what decision the jury reached other than liability and an amount of damages. No further analysis may be undertaken. Special interrogatories concerning damages were not requested. We are left in the position of not knowing the basis for the jury's verdict and we will not question or theorize about the jury's findings.

*Tyson, supra.* Furthermore, in *J.E. Merit Constructors, Inc. v. Cooper*, 345 Ark. 136, 44 S.W.3d 336 (2001), we stated that "in the absence of any suggestion that the jury based its decision on something other than the evidence of damages presented to it, or that it did not follow the trial court's instructions, we do not reverse the jury's assessment of Cooper's damages." As stated in *Tyson, supra*, we should not speculate, and try to decide how the damages were awarded, nor reverse the award of damages when there is no evidence that the jury did not follow the law they were instructed upon. *Tyson, supra.*

Here, the general verdict rendered by the jury does not indicate whether they found negligence or breach of contract or both. The trial court instructed the jury that there were two bases for High and Couch's claim of damages:

> Plaintiffs, Highcouch, Inc. and Donnieron LLC, assert two separate grounds for the recovery of damages: First, that there was negligence on the part of Jim Hyden and Glenn Borkowski; and second, that Jim Hyden and Glenn Borkowski breached their contract with Highcouch Inc. and Donnieron LLC.

The verdict only shows that the jury found that Hyden and Borkowski were liable and that damages in the amount of $850,000.00

resulted from their actions. The trial court's order does not specify how the money was awarded or upon what basis. The order states in pertinent part:

> A jury of twelve was duly empaneled and, after hearing the evidence, the instructions of the court, and the arguments of counsel, returned the following verdict in open court:
>
> We the jury find in favor of plaintiffs, Highcouch, Inc. and Donnieron LLC, and award damages in the amount of $850,000.00.
>
> It is therefore ordered, considered and adjudged that plaintiffs have judgment against defendants, jointly and severally, in the amount of $850,000.00 which will bear interest at ten percent per annum and for their legally recoverable costs.

■ ■ As we held in *Tyson, supra* we will not speculate or theorize about how the jury awarded damages, nor will we reverse the award of damages when there is no evidence that the jury did not follow the law they were instructed upon. In the instant case, the jury was instructed on both negligence and breach of contract and the elements that had to be proven for each. However, the verdict rendered by the jury stated only that $850,000.00 was awarded and did not specify a basis. Without indication of how the jury reached its award of damages and without evidence that the jury members did not follow the trial court's instructions, we will not reverse.

Accordingly, we affirm.

CORBIN, J., not participating.

IMBER, J., concurs.

ANNABELLE CLINTON IMBER, Justice, concurring. I concur with the majority's decision to affirm the circuit court because there was sufficient evidence to support finding that the appellants were liable to the appellees.

Defendant-attorneys appeal from the trial court's denial of their motion for directed verdict and judgment notwithstanding the verdict as to proof of negligence and resulting damages, which is a challenge to the sufficiency of the evidence. *Callahan v. Clark*, 321 Ark. 376, 386, 901 S.W.2d 842, 847 (1995); *see Conagra, Inc. v.*

*Strother*, 340 Ark. 672, 676, 13 S.W.3d 150, 153 (2000) ("[A] motion for JNOV is technically only a renewal of the motion for a directed verdict made at the close of the evidence"). Our standard in reviewing the sufficiency of the evidence is well settled: (1) the evidence is viewed in a light most favorable to the appellee; (2) the jury's finding will be upheld if there is any substantial evidence to support it; and (3) substantial evidence is that of sufficient force and character to induce the mind of the factfinder past speculation and conjecture. *Callahan v. Clark*, 321 Ark. at 386, 901 S.W.2d at 847.

This court does not try issues of fact but examines the record to determine whether there is substantial evidence to support the jury's verdict. *Conagra v. Strother*, 340 Ark. at 676, 13 S.W.3d at 152. Thus, when testing the sufficiency of the evidence on appellate review, this court need only consider the testimony of the appellees and evidence which is most favorable to the appellees. *Wal-Mart Stores, Inc. v. Dolph*, 308 Ark. 439, 441, 825 S.W.2d 810, 811 (1992). In Arkansas, plaintiffs who make a negligence claim must show the existence of damages proximately caused by the defendant's negligence. *Callahan v. Clark*, 321 Ark. at 386, 901 S.W.2d at 847. To show damages and proximate cause in a legal malpractice action, the plaintiff must show that, but for the alleged negligence, the result would have been different in the underlying action. *Id.*

Given the evidence presented below, I believe that the jury's verdict of damages is supported by substantial evidence. The appellees testified that they would not have sold their business to Mr. Sitton's companies but for the assurances and representations of the appellants. The offer from Hahn provided the jury with sufficient evidence that the fair market value of the business was $5,500,000. Likewise, the evidence clearly showed that the appellees collected $4,085,000 from the sale prior to this litigation. Given the fair market value of the business and the payments actually received, the jury's verdict of $850,000 in damages is not unreasonable and is supported by substantial evidence.

For the reasons stated above, I concur.