

# SUPREME COURT OF ARKANSAS

No. CV-13-87

| | |
|---|---|
| ARKANSAS REALTORS ASSOCIATION<br>APPELLANT/<br>CROSS-APPELLEE<br><br>V.<br><br>REAL FORMS, LLC<br>APPELLEE/<br>CROSS-APPELLANT | **Opinion Delivered** September 25, 2014<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. CIV-11-1438-4]<br><br>HONORABLE G. CHADD MASON, JUDGE<br><br><u>AFFIRMED ON APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL</u>. |

**DONALD L. CORBIN, Associate Justice**

This appeal arises from a breach-of contract action in which Appellee Real Forms, LLC, sued Appellant Arkansas Realtors Association, after Appellant terminated a software-development agreement. Appellant appeals an order of the Washington County Circuit Court denying its motion for judgment notwithstanding the verdict ("JNOV") or, in the alternative, for new trial. For reversal, Appellant argues that the circuit court erred because substantial evidence does not support the jury's finding on Appellee's breach-of-contract claim; that, as a matter of law, three separate provisions of the parties' agreement entitled Appellant to terminate the contract; that the circuit court abused its discretion by refusing to instruct the jury on the law of impossibility; and that the circuit court failed to make a record on the parties' motions in limine. Appellee cross-appealed from the circuit court's

SLIP OPINION

postjudgment denial of its motion for attorneys' fees and costs. We have jurisdiction pursuant to Arkansas Supreme Court Rule 1-2(b)(1) and (5) (2014), as this appeal presents issues of first impression and needing clarification of the law. We affirm the appeal, and we reverse and remand the cross-appeal.

## I. *Facts*

Appellant, a statewide organization whose members work in the real-estate business, provides standard real-estate contract forms to aid its members in conducting real-estate transactions. Between 1997 and 1998, Appellant entered into a contract with Robert Bodily to create software for an electronic version of the contract forms so that Appellant's members could prepare separate forms for each real-estate transaction and digitally edit each form. In 2008, Matt Hudson, through his company, Lynergy, negotiated a contract with Appellant to provide an online version of the software to complement Bodily's desktop version. Appellant's members were to use both the online and desktop versions and to synchronize them as needed. However, the online and desktop versions did not always synchronize properly, and Appellant solicited bids for another software vendor. Appellant ultimately hired Lynergy instead of Bodily. Hudson and his brother, David Hudson, who was Appellant's Director of Technology, then formed Appellee.

On August 12, 2010, Matt Hudson, on behalf of Appellee, and Mike Henry, as Appellant's president, entered into a custom-development agreement ("contract"), specifying that Appellee would provide Appellant with services, including software development, technical support, maintenance, and other related services for an initial period of five years.

2

Pursuant to the parties' agreement, Appellee's software and computer programs were designed to meet the "business requirements" of Appellant and specifically "to create, execute, report, print, and manage all of the forms and contracts associated with a real–estate transaction in compliance with all governing laws, rules, and regulations." Because Appellant's 2010 contract forms were set to expire at the end of the calendar year, the parties' contract required Appellee to complete installation of its software no later than December 1, 2010.

For several reasons, Appellee did not complete the installation of its software by the December 1, 2010 deadline. Appellant, as required by the contract, attempted to obtain a copy of Bodily's software, but, as the sole owner, Bodily refused to release it to Appellant. Because of Bodily's refusal to release his software, Appellant, contrary to the terms of the parties' contract, provided its forms to Appellee in a format other than Microsoft Word. As a result, Appellee required additional time to develop its software, and Appellant allowed the additional time that Appellee requested. Appellant was also scheduled to provide Appellee with a Microsoft Word version of the contract forms no later than sixty days from the date of the contract. While Appellant made most of the revisions by November 2010, the last contract form in its final version was not submitted to Appellee until December 31, 2010.

On December 28, 2010, Karen Crowson, one of Appellant's authorized representatives, gave Appellee permission to launch the software as it existed on that date with the understanding that Appellee would continue "to address function errors as those arise." The next day, on December 29, 2010, Appellee launched its 2011 software system, which was available for purchase and use by Appellant's members. However, those members

3

experienced problems, which Appellant identified as (1) an exposure of Appellant's financial account to improper access by third parties; and (2) an unintentional access of confidential data of other realtors' clients. Subsequently, Appellee received a letter from Appellant alleging that the software "failed to protect adequately the confidential client information contained in the system," and requiring Appellee to deactivate the software. Appellee honored Appellant's request and deactivated the software that same day. On January 12, 2011, Appellee met with Appellant's leadership, staff, and legal team to discuss the specifics of the software deficiency.

In January 2011, Appellant learned that Appellee had not acquired an "Error and Omissions" insurance policy for Appellant's benefit, as required by the agreement, although Appellant had paid $1,500 to Appellee for the insurance premium. Appellant requested that the insurance policy acquired by Appellee be amended to correct that deficiency, but it was never updated to cover Appellant. However, according to the testimony of David Hudson, he tried to obtain the insurance but learned that the "type of coverage that they were asking for" did not exist. When Hudson conveyed that information to Appellant, he never received a response.

On March 4, 2011, Appellee launched a final version of the software on Appellant's website. Twenty-five of Appellant's beta testers were given access to continue testing the software. J.D. Robinson, a beta tester and Director of Software Development at Mainstream Technologies, repeatedly gained unauthorized access to individual user's software accounts. Appellant later notified Appellee by e-mail that it had allegedly identified "an issue regarding

the security provided in the Real Forms software solution that has failed to protect the confidential client information contained in the system."

On March 21, 2011, Appellant sent written notice terminating the parties' contract pursuant to sections 16.2 and 16.4 of the contract based on its belief that the software allowed users to access confidential client data improperly and that the software did not meet the requisite business requirements set forth in the contract. With the letter, Appellant also enclosed a video purportedly depicting the alleged software deficiency referenced in the notice. Appellant subsequently sent Appellee an additional notification, clarifying the reason for termination and citing in detail the alleged improper-access issue. In its communication, Appellant identified the reason for termination as follows:

> The failure of the security in the system to protect confidential information is an error that prevents productive use of the system. The error was not corrected by Real Forms within two (2) business days of being notified. Therefore, the ARA has the right to and is terminating the contract under Paragraph 5.6 of the agreement.

Appellee filed a complaint against Appellant on May 11, 2011, alleging wrongful termination of the parties' contract on March 21, 2011. Appellant filed its answer and counterclaim, including a counterclaim for breach of contract, tortious interference with contractual relationship or business expectancy, fraud and deceit, violation of the Arkansas Deceptive Trade Practices Act, and defamation. Both parties filed cross-motions for summary judgment. Prior to trial, the circuit court dismissed with prejudice Appellant's counterclaims for fraud and deceit and for a violation of the Arkansas Deceptive Trade Practices Act.

On May 9, 2012, a five-day jury trial commenced. At trial, the circuit court conducted an off-the-record, in-chambers conference on the parties' five motions in limine and, on the record, ruled on one motion in limine concerning the mention of insurance. At the close of the evidence, the circuit court directed a verdict in favor of Appellee on Appellant's counterclaim for intentional interference with a contractual relationship or business expectancy and later dismissed the counterclaim with prejudice. The circuit court also denied Appellant's motion to instruct the jury on the law of impossibility. The jury returned a verdict in favor of Appellee on the breach-of-contract and defamation counterclaims and awarded Appellee $150,000 in compensatory damages. On May 23, 2012, the circuit court entered its order reflecting the jury verdict and stated that "payment of the parties' costs and attorneys' fees shall be determined separately by the Court."

On June 4, 2012, Appellee filed its motion for attorneys' fees and costs pursuant to Arkansas Code Annotated section 16–22–308 (Repl. 1999). In its motion, Appellee requested $100,000 in attorneys' fees and $1,341.75 in costs based on the hours of two attorneys representing Appellee. Appellant later filed a JNOV motion, pursuant to Arkansas Rule of Civil Procedure 50(b), arguing that the jury's verdict was not supported by substantial evidence and that, as a matter of law, the circuit court must set the jury verdict aside and enter judgment in favor of Appellant or, in the alternative, order a new trial. On June 28, 2012, the circuit court ruled that the jury verdict was supported by substantial evidence, denied Appellant's JNOV motion, and denied Appellee's motion for attorneys' fees and costs. On



July 27, 2012, Appellant timely filed a notice of appeal, and Appellee filed a notice of cross-appeal on August 6, 2012. Both parties now bring their appeals.

## II. *Substantial Evidence of Material Breach*

Appellant makes two substantial-evidence arguments on appeal. For the first point on appeal, Appellant argues that the circuit court erred in denying its motions for directed verdict and JNOV motion because substantial evidence did not support the jury's finding on the breach-of-contract counterclaim. Specifically, Appellant contends that substantial evidence does not support the allegation of its inability to deliver the Bodily software that constituted a material breach; that Appellee failed to complete installation of the software in a timely manner; and that Appellee's failure to obtain an insurance policy for Appellant's benefit excused Appellant's performance. Alternatively, Appellee requests on appeal that this court reverse and remand for a new trial because the jury's verdict was clearly against the preponderance of the evidence.

Appellee responds that the circuit court properly denied Appellant's motion for directed verdict and JNOV motion, as substantial evidence supported its breach-of-contract claim. Specifically, Appellee asserts that the jury found substantial evidence of three different breaches by Appellant as follows: (1) Appellant's failure to deliver Bodily's software and source code as required by the parties' contract, which predated any alleged breaches by Appellee; (2) Appellant's failure to act in good faith in its performance of the parties' contract, which, Appellee claims, thwarted its ability to perform; and (3) wrongful termination of the

contract by Appellant. Appellee further asserts that any of these breaches excused its future obligation to perform as a matter of law.

For the second point on appeal, Appellant argues that the jury's finding that it breached the contract is not supported by substantial evidence. Appellant asserts that, as a matter of law, three separate provisions of the contract entitled it to terminate the contract without repercussion. Specifically, Appellant contends that substantial evidence conclusively showed that (1) Appellee failed to correct an error that prevented productive use of the software, per section 5.6 of the contract; (2) Appellee's software failed to meet Appellant's business requirements, as required by section 16.2 of the contract; and (3) Appellee materially breached the agreement and failed to cure the breach within the thirty days prescribed by section 16.4 of the contract.

Appellee responds that substantial evidence supported the jury's verdict because, as a matter of law, Appellant did not comply with the contract's required procedures for termination. Appellee also argues that substantial evidence was presented at trial that Appellant did not give Appellee proper notice or a chance to cure the alleged software deficiency found in March 2011. Appellee maintains that Appellant was not entitled to effect any termination under these three provisions, nor did Appellant comply with the contract's required procedures for termination.

We discuss Appellant's two breach-of-contract arguments in tandem. Our standard of review for a denial of a directed-verdict motion is well settled:

[I]n reviewing the denial of a motion for [a directed verdict], we will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. It is not our place to try issues of fact; we simply review the record for substantial evidence to support the jury's verdict. In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. A motion for directed verdict should be denied when there is conflict in the evidence, or when the evidence is such that fair-minded people might reach different conclusions.

*Carter v. Cline*, 2011 Ark. 474, at 10, 385 S.W.3d 745, 752 (quoting *Carr v. Nance*, 2010 Ark. 497, at 15–16, 370 S.W.3d 826, 836). The same standard holds true for a motion for JNOV. *Id.* A circuit court may enter a JNOV only if there is no substantial evidence to support the verdict and the moving party is entitled to judgment as a matter of law. *Id.*

We do not try issues of fact but examine the record to determine whether there is substantial evidence to support the jury's verdict. *Boellner v. Clinical Study Ctrs., LLC*, 2011 Ark. 83, 378 S.W.3d 745. When testing the sufficiency of the evidence on appellate review, we need only consider the testimony of appellees and evidence that is most favorable to appellees. *Wal-Mart Stores, Inc. v. Dolph*, 308 Ark. 439, 825 S.W.2d 810 (1992). We defer to the jury's resolution of the issue unless we can say there is no reasonable probability to support the Appellee's version. *Wheeler Motor Co. v. Roth*, 315 Ark. 318, 867 S.W.2d 446 (1993). We will not overturn a jury verdict unless it is clearly the result of passion or prejudice. *Duggar v. Arrow Coach Lines, Inc.*, 288 Ark. 522, 707 S.W.2d 316 (1986). Upon appellate review we consider the evidence in the light most favorable to the verdict and if

9

supported by substantial evidence, we will affirm. *Petrus Chrysler-Plymouth v. Davis*, 283 Ark. 172, 671 S.W.2d 749 (1984).

On a breach–of–contract claim, when performance of a duty under a contract is contemplated, any nonperformance of that duty is a breach. *Zufari v. Architecture Plus*, 323 Ark. 411, 914 S.W.2d 756 (1996). As a general rule, the failure of one party to perform his contractual obligations releases the other party from his obligations. *Stocker v. Hall*, 269 Ark. 468, 602 S.W.2d 662 (1980). However, a relatively minor failure of performance on the part of one party does not justify the other in seeking to escape any responsibility under the terms of the contract; for one party's obligation to perform to be discharged, the other party's breach must be material. *Boellner*, 2011 Ark. 83, 378 S.W.3d 745.

We now turn to Appellant's first breach-of-contract argument concerning its failure to deliver Bodily's software and source code, as required by section 2.4 of the parties' contract. Appellant claims that Appellee materially breached this provision of the contract by failing to deliver Appellee's software in a timely manner and that Appellee's inability to obtain a copy of the Bodily software delayed its obligation to complete the installation of the system.

Section 2.4 of the parties' contract states that Appellant would provide a copy of the Bodily software and source code to Appellee "to enable Real Forms to convert the ARA Realtor Forms for prior years into the Real Forms Contract Management Software." According to the testimony of Matt Hudson and Bryan Ruggeri, Matt Hudson's former business partner, the Bodily software and source code were essential because they would have provided quick access to the 2010 forms in a Microsoft Word format, and those forms could

have easily been converted into the new system. Because the Bodily software and code were not accessible, Appellee was forced to use converted PDF documents, instead of the original Microsoft Word format, and for that reason, the project was delayed. Additionally, the Bodily source code would have allowed Appellee to capture the data in the old system without having to write a new program for importing the data from the 2009 and 2010 databases into the 2011 software system.

Hudson testified that, for these reasons, Appellee took time away from its software development to its revision of the forms. Hudson testified to the "painstaking" aspects of this project because of Appellant's failure to provide the Bodily software and source code. He testified, "Our expectation was . . . . [y]ou would just basically make the changes in Word and then print it in PDF. However, that was not allowable. We got – they were in Word but it was a mess. Forty-four forms of junk." Hudson testified that, because the forms were not properly formatted, he spent much time importing the 2009 and 2010 data into the newly developed software. Ruggeri also testified that he spent from four to eight extra weeks modifying and converting the forms because they were not Microsoft Word documents. Hudson also explained that the initial incorrect data import caused by the lack of the Bodily software contributed to the security issue experienced by the realtors. Based on this testimony, the jury could have found substantial evidence that Appellant's failure to deliver Bodily's software and source code was a material breach.

We have stated that a jury determines the credibility of the witnesses and the weight and value of their evidence, and it may believe or disbelieve the testimony of any one or all

SLIP OPINION

of the witnesses, though such evidence is uncontradicted and unimpeached. *Dover v. Stephenson Oil Co., Inc.*, 354 Ark. 695, 128 S.W.3d 805 (2003). As such, the jury determined the credibility of the parties' witnesses and gave weight to these witnesses' testimony. Viewing this evidence in the light most favorable to Appellee, we hold that substantial evidence supports the jury's verdict that Appellant materially breached its contract with Appellee by failing to deliver Bodily's software and source code as required by the parties' contract. Thus, we affirm the jury's verdict on these grounds.

Further, we recognize that the jury returned a verdict for Appellee on Appellant's breach-of-contract counterclaim on a general verdict form without specifying which particular breach occurred. With regard to general verdict forms, we stated in *Hyden v. Highcouch, Inc.*, 353 Ark. 609, 110 S.W.3d 760 (2003), as follows:

> If the jury's verdict is rendered on a general verdict form, it is an indivisible entity or, in other words, a finding upon the whole case. *Tyson Foods, Inc. v. Davis*, 347 Ark. 566, 66 S.W.3d 568 (2002). Where a general jury verdict is used, this court will not speculate on what the jury found. *Primm v. U.S Fidelity Guaranty Ins. Corp.*, 324 Ark. 409, 922 S.W.2d 319 (1996). When special interrogatories concerning liability or damages are not requested, this court is left in the position of not knowing the basis for the jury's verdict, and this court will not question nor theorize about the jury's findings. *Esry v. Carden*, 328 Ark. 153, 942 S.W.2d 846 (1997).

*Id.* at 615, 110 S.W.3d at 764. Therefore, because substantial evidence supported the jury's breach-of-contract verdict in this instance, we decline to reach Appellant's remaining breach-of-contract arguments. *See Boellner*, 2011 Ark. 83, 378 S.W.3d 745.



### III. *Jury Instruction*

For the third point on appeal, Appellant argued that the circuit court abused its discretion by refusing to instruct the jury on the law of impossibility when it proffered AMI Civ. 2439 regarding the impossibility of performance. Specifically, Appellant claims that the circuit court's conclusion that the impossibility was subjective, not objective, constituted a mistake of law. Appellee responds that there was no basis in the evidence to support the giving of AMI Civ. 2439 and that the circuit court did not abuse its discretion in denying the proffered instruction.

Under Arkansas law, a party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support giving the instruction. *See ProAssurance Indem. Co., Inc. v. Metheny*, 2012 Ark. 461, 425 S.W.3d 689. We will not reverse a circuit court's refusal to give a proffered instruction unless there was an abuse of discretion. *Id.*

This court set out the standard to determine impossibility of performance in *Frigillana v. Frigillana*, 266 Ark. 296, 584 S.W.2d 30 (1979), which states as follows:

> The burden of proving impossibility of performance, its nature and extent and causative effect rests upon the party alleging it. He must show that he took virtually every action within his power to perform his duty under the contract. It must be shown that the thing to be done cannot be effected by any means. Resolution of the question requires an examination into the conduct of the party pleading the defense in order to determine the presence or absence of fault on his part in failing [to] perform.

*Id.* at 302–03, 584 S.W.2d at 33 (citations omitted). This court has drawn a "distinction between objective impossibility, which amounts to saying, '[t]he thing cannot be done,' and

subjective impossibility[,] 'I cannot do it.'" *Christy v. Pilkinton*, 224 Ark. 407, 407, 273

S.W.2d 533, 533 (1954) (quoting Restatement (First) of Contracts § 455 cmt. a (1932)).

In the case at bar, Appellant proffered Arkansas Model Jury Instruction–Civil 2439,

which provides as follows:

> [P]erformance of the contract was impossible and [Appellant] has the burden of proving each of the two essential propositions:
>
> First, that [Appellant] diligently attempted to perform the contract; and
>
> Second, that performance became impossible as a result of Robert Bodily's sole ownership of the 2010 ARA Realtor Forms Software and his unwillingness to provide that to the ARA.

The circuit court subsequently refused the instruction and ruled as follows:

> [COUNSEL FOR APPELLANT]: Your Honor, we also somewhat talked about an impossibility instruction that I don't have typed up to proffer. I think [it] is AMI 2439.
>
> THE COURT: Well, as I discussed in chambers, I'm not going to give that instruction because I think there is a difference between subjective impossibility and objective impossibility. In this Court's view, this involves subjective impossibility, not objective impossibility. And of course we're referring to the provision of the source code, if you will, to Real Forms by the previous software developer. And I'll note your proffer for the record. I do think it's supposed to be tendered and marked as an exhibit.
>
> [COUNSEL FOR APPELLANT]: We'll mark a copy.

Here, we agree with the circuit court's refusal to give AMI 2439, as the evidence

presented at trial did not support the impossibility defense. According to Meyers, Appellant

was unable to procure Bodily's software and source code. Meyers stated, "[We] [c]ouldn't

get it. We [had] no right to it. . . . He owned it." He testified that it was his understanding

14

that Appellant found out after thirteen years of doing business with Bodily that he owned the source code. When asked whether Appellant attempted to buy the software or the source code from Bodily, Meyers responded, "Not that I know of." Meyers also testified that he was not aware of any offer by Appellant either to buy Bodily's software or source code or to license it. Meyers stated that he simply understood that Appellant had asked Bodily for the software and code, and Bodily refused. This evidence suggests that Appellant failed to take "every action within [its] power to perform [its] duty under the contract" by neglecting to obtain the Bodily software and source code. *Frigillana*, 266 Ark. at 303, 584 S.W.2d at 33. For these reasons, based on this testimony, no evidence supports a finding of impossibility—either objective or subjective—for Appellant to comply with section 2.4 of the contract. Thus, we hold that the circuit court did not abuse its discretion in refusing to give the proffered AMI jury instruction.

## IV. *Motions in Limine*

For the fourth argument on appeal, Appellant argues that the circuit court failed to make a record prior to trial on four of the parties' five motions in limine. Appellee responds that the circuit court's failure to make a record on the motions in limine is not reversible error and that Appellant has not alleged that the circuit court erred in any of its rulings on the subject motions in limine, nor has it alleged that any of the subject motions are material to the outcome of the case. Appellee maintains that this omission bars Appellant from seeking a remand to the circuit court.

The relevant facts supporting this issue are as follows. Prior to trial, the parties filed five motions in limine. Appellee filed two motions in limine to exclude lay-witness opinion testimony that its software had functionality and design flaws that did not meet Appellant's business requirements and to exclude evidence of insurance. Appellant then filed three motions to exclude evidence of Bodily's contract with Appellant; to exclude the interpretation of the contract terms by Hunter Jones, a software-development expert witness; and to exclude the evidence of hours worked by Matt Hudson and David Hudson. On the first day of trial, the circuit court held a motion-in-limine hearing where it considered these motions off the record in chambers. When returning to the courtroom, the circuit court stated as follows:

> THE COURT: Okay. Alright, the second issue is, I believe Mr. Hutchinson has a Motion in Limine concerning the mention of insurance in this case. We did deal with that issue in chambers. It's been the Court's – it is the Court's decision that I'm going to allow the question to be asked concerning whether or not insurance was obtained by Real Forms pursuant to the Contract, for the limited purpose of showing breach in a term of the Contract.
>
> Furthermore, I've instructed the Defendant that they in no way, shape, or form will infer the amount of the coverage. Further, they will not question or infer that it was liability coverage, E & O coverage, or any other coverage which would relate to either provision of damages sustained by a party in this lawsuit or provision of litigation costs in this lawsuit. So that is my intent.
>
> . . . So that's where we stand. Mr. Hutchinson, I'll consider your argument and your motion at this time.

At that point, counsel for both parties presented argument on Appellant's motion in limine, and the circuit court reiterated its ruling that it would allow a reference to insurance for a limited purpose in the breach-of-contract action. The circuit court made no reference to the remaining four motions in limine at that time.

The issue then is whether the circuit court erred in failing to make a record on the parties' motions in limine. Administrative Order No. 4 provides that, "[u]nless waived on the record by the parties, it *shall* be the duty of any circuit court to require that a verbatim record be made of all proceedings . . . pertaining to any contested matter before the court or the jury." (Emphasis added.) *See also* Ark. Code Ann. § 16-13-510 (Repl. 2010). We have strictly construed and applied Administrative Order No. 4. *Robinson v. State*, 353 Ark. 372, 108 S.W.3d 622 (2003); *Bradford v. State*, 351 Ark. 394, 94 S.W.3d 904 (2003) (emphasizing that a verbatim record of the proceedings is a requirement). The rule has been described as "mandatory." *Thompson v. Guthrie*, 373 Ark. 443, 447, 284 S.W.3d 455, 457 (2008). We have held that a party's silence on this issue at trial will not be construed as an implied waiver of the verbatim-record requirement. *George v. State*, 356 Ark. 345, 151 S.W.3d 770 (2004) (holding that this court could not review the circuit court's ruling on the motion without a transcript of the proceedings and remanding for the limited purpose of the circuit court to conduct a hearing on the record on defendant's motion to suppress).

Nevertheless, our case law is replete with the well-established principle that it is incumbent upon an appellant to bring up a record sufficient to demonstrate error. *Hankins v. Dep't of Fin. & Admin.*, 330 Ark. 492, 954 S.W.2d 259 (1997). Here, Appellant's argument is misplaced for the following reasons. First, Appellant's motion in limine to exclude any evidence of Bodily's contract with Appellant was addressed by the circuit court in a side-bar conference during trial. At that time, the court reminded counsel of what questions they could ask regarding the Bodily contract. Second, with regard to Appellant's motion in limine

to exclude Hunter Jones's interpretation of the contract terms, Jones testified for Appellee, and the circuit court sustained an objection made by Appellant during direct examination and ruled that Hunter could not interpret the contract in his testimony. Third, Appellant's motion in limine to exclude the hours worked by the Hudson brothers was not addressed by the circuit court, but Appellant never objected during trial or when the parties presented argument to the circuit court. Thus, given these specific circumstances, we adhere to our rule that Appellant was required to bring a record sufficient to demonstrate error, and we cannot say that Appellant was prejudiced by the circuit court's failure to follow Administrative Order No. 4. Accordingly, we decline Appellant's invitation to order a limited remand on this ground.

## V. *Cross-Appeal*

For the cross-appeal, Appellee seeks reversal of the circuit court's ruling in the June 28, 2012 postjudgment order denying its motion for attorneys' fees and costs and argues that the circuit court did not provide any reason for its decision to deny attorneys' fees and costs. In response, Appellant asserts that, pursuant to section 16–22–308, the circuit court is given discretionary authority to award attorneys' fees and properly exercised that discretion.

Arkansas Code Annotated section 16–22–308 gives the circuit court authority to award attorneys' fees in contract actions and provides in pertinent part:

> In any civil action to recover on . . . breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

18

On the award of attorneys' fees, we stated in *Harrill & Sutter, PLLC v. Kosin*, 2011 Ark. 51, at 18, 378 S.W.3d 135, 145 as follows:

> Our case law suggests that the circuit court must give an explanation for its decision in denying attorney's fees. *Little Rock Wastewater Utility v. Larry Moyer Trucking, Inc.*, 321 Ark. 303, 902 S.W.2d 760 (1995) (remanding to the trial court for a determination of whether to award attorney's fees and to give an explanation for doing so); *Whetstone v. Chadduck*, 316 Ark. 330, 871 S.W.2d 583 (1994) (remanding for reconsideration when the trial court's order gives no explanation that can be founded in the proper application of the law).

Here, Appellee filed its motion for attorneys' fees and costs on June 4, 2012, requesting an award of $101,341.75 with exhibits in support of the motion. On June 28, 2012, the circuit court entered an order denying both Appellant's JNOV and new-trial motion and Appellee's motion for attorneys' fees and costs. In its order, the circuit court summarily denied the motion by stating, "Plaintiff's *Motion for Attorneys' Fees and Costs* should be and hereby is denied." Accordingly, we are unable to discern exactly on what basis the circuit court denied the attorneys' fees. *See Harrill*, 2011 Ark. 51, 378 S.W.3d 135. We therefore reverse and remand to the circuit court for the limited purpose of making findings that will enable us to review the fee decision.

Affirmed on appeal; reversed and remanded on cross-appeal.

BAKER and HART, JJ., concur.

**KAREN R. BAKER, Justice, concurring** . While I agree with the majority on the outcome of this case, I would reach the result through different means. Therefore, I concur.

The majority holds that a jury could have found substantial evidence that the ARA's failure to deliver Robert Bodily's software and source code to Real Forms was a material breach of contract. I would not reach the issue.

It is uncontested that ARA did not provide Real Forms with the Bodily software and source codes. The majority holds that this was a breach. However, the majority does not discuss whether the breach was waived by continued performance. We note that the issue of waiver was not argued on appeal. Even so, in *Grayson-McLeod Lumber Co. v. Slack-Kress Tie & Stave Co.*, 102 Ark. 79, 143 S.W. 581 (1912), this court stated that it was the duty of the party who asserted breach, when it discovered the apparent breach of the contract, to assert the forfeiture immediately. By proceeding with the performance of the contract it waived the breach. *Id.* Here, Real Forms was made aware that ARA would not be providthe Bodily software and continued performance of the contract. Therefore, there is a question whether its claim of breach on this matter was waived.

I concur in the result, however, because I believe that there was substantial evidence that ARA breached the contract based on its noncompliance with the contract's required procedures for termination.[1] The jury here used a general verdict form. When a jury's verdict is rendered on a general verdict form, it is a finding upon the whole case; this court will not speculate on what the jury found where a general jury verdict is used. *Carr v. Nance*,

---

[1]There is substantial evidence to show that ARA did not provide notice of an error that prevented productive use of the software as required by section 5.6 of the contract; that the software met business requirements; and that Real Forms was not given thirty days to correct the alleged deficiencies under section 16.4 of the contract.

2010 Ark. 497, 370 S.W.3d 826. The jury could have found that ARA breached the contract either through not providing the Bodily software or not complying with the notice provisions in the contract. We will not speculate as to which breach the jury found. Therefore, because there is substantial evidence that ARA did not comply with the notice provisions for termination set out in the contract, I would affirm the case without reaching the first point on appeal.

I also would not reach the issue of whether the circuit court erred in denying ARA's impossibility-of-performance instruction. Because I would affirm on the second point on appeal without reaching the matter of the Bodily software, the matter of impossibility under that point on appeal is of no moment.

*Quattlebaum, Grooms, Tull & Burrow PLLC*, by: *John E. Tull III*, *E. B. Chiles IV*, and *Everett C. Tucker IV*, for appellant.

*The Asa Hutchinson Law Group, PLC*, by: *W. Asa Hutchinson III*, for appellee.