SLIP OPINION



Cite as 2017 Ark. App. 357

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV–16–273

|  |  |
|---|---|
| F. DAVID CHAMBERS AND MICHELLE CHAMBERS<br><br>APPELLANTS<br><br>V.<br><br>KENNETH MCDOUGALD<br><br>APPELLEE | **Opinion Delivered:** May 31, 2017<br><br>APPEAL FROM THE BRADLEY COUNTY CIRCUIT COURT [NO. 06CV-12-59]<br><br>HONORABLE DON GLOVER, JUDGE<br><br>REVERSED AND REMANDED |

## BRANDON J. HARRISON, Judge

Dr. F. David Chambers and Michelle Chambers appeal from the circuit court's judgment in favor of Kenneth McDougald, wherein he was awarded the principal sum of $300,000 on a promissory note, plus prejudgment interest of $159,698.63. They argue that the circuit court erred in excluding their evidence that McDougald was the first to breach the parties' purchase agreement that included the note. They also challenge the award of attorney's fees to McDougald. We agree that the circuit court erred in excluding this evidence. The case is therefore reversed and remanded for a new trial.

In the summer of 2005, the Chamberses and McDougald were members of a limited liability company known as Bradley Timberland Resources, LLC (BTR). The Chamberses were the majority owners of BTR. McDougald approached the Chamberses about selling his 15 percent interest in BTR to them. On July 22, 2005, the parties entered into a written purchase agreement for McDougald to sell his interest to the Chamberses. According to the

terms of the agreement, the purchase price was $500,000, payable in several different forms and at different times. First, the Chamberses were to pay $35,418 in cash to McDougald upon execution of the agreement. Immediately upon this payment, McDougald was to have no further interest, whether ownership or management, in BTR. As another part of the payment scheme, the Chamberses were to convey a thirty-acre tract of land to McDougald, with McDougald responsible for securing the release of any encumbrances on this property. The parties further agreed that, as partial payment, the Chamberses were to assign to McDougald a note receivable from Roger George (the George note) payable to the Chamberses in the amount of $119,763.13. As for the remaining sum due under the agreement, the Chamberses were to pay $300,000 to McDougald in three equal payments of $100,000 due July 1 of 2007, 2008, and 2009. Finally, paragraph 7 of the agreement provided that McDougald was to continue his employment (as vice president and general manager) with Bradley Lumber Company (BLC), which was wholly owned by the Chamberses, for the period of the contract and to defer all salary due him until he and the Chamberses mutually agreed to disburse those deferred sums (Paragraph 7).

That same day, the Chamberses executed the promissory note at issue to secure their obligations under the purchase agreement. The note had an interest rate of 3 percent. It also contained a penalty-interest-rate provision in the event of a default as well as a provision for reasonable attorney's fees.

McDougald had signed an employment contract with BLC in 2002. Although the term of the contract expired in January 2005, it contained a "roll over" provision stating

that it would remain in effect until modified by the parties. McDougald continued his employment with BLC until July 2006.

On 15 June 2012, McDougald filed suit against the Chamberses to collect on the note, asserting that none of the $300,000 due had been paid. The Chamberses answered, admitting execution of the note but denying that they were in default or that they had failed to make any payments. They later amended their answer to include a counterclaim asserting that McDougald had breached the purchase agreement by continuing to pay himself while working for BLC.

McDougald answered the counterclaim, denying its material allegations. He later filed an amended complaint seeking the deferred compensation the Chamberses owed him. In it, McDougald contended that the $300,000 note was part of the consideration he received from the Chamberses for his interest in BTR. The Chamberses answered the amended complaint, again admitting execution of the promissory note but denying the other material allegations.

The Chamberses amended their answer and counterclaim to assert that McDougald had breached the contract by failing to defer his salary and by failing to remain employed by BLC until completion of the term of the note. The Chamberses also claimed that McDougald had breached his fiduciary duties by wrongfully removing and converting timber belonging to BTR and by neglecting to cut timber on BLC's property, causing it to ruin and lose value. The Chamberses sought recoupment of the moneys McDougald received from payment of the George note, the moneys he paid himself as salary while employed at BLC, the cash payment specified in the purchase agreement, damages to the

real property transferred to McDougald in the purchase agreement, and damages for the timber wrongfully removed or allowed to ruin.

McDougald responded to the counterclaim, denying the material allegations. Pleading affirmatively, McDougald argued that David Chambers agreed to McDougald's early retirement in July 2006. He also contended that the claims asserted by the Chamberses could be pressed only by BLC.

The Chamberses and McDougald each filed motions to nonsuit a portion of their claims. The Chamberses sought to dismiss all of their counterclaims against McDougald while McDougald requested dismissal of his claim for deferred compensation. Orders were entered granting the nonsuits and dismissing the claims.

McDougald filed a motion in limine seeking to preclude the Chamberses from introducing evidence that he possibly breached the purchase agreement by terminating his employment with BLC. He argued that the right to the benefit of his employment rested with BLC, as did any claim for the breach. He also argued that the Chamberses could not assert defenses belonging to BLC. McDougald further contended that the employment provision was unenforceable because it lacked mutuality of obligation.

The Chamberses responded to the motion in limine, arguing that they, not BLC, were the only parties who could enforce the employment provision of the purchase agreement.

The Chamberses filed their own motion in limine where, among other things, they sought to exclude evidence that they had filed a counterclaim to recover moneys McDougald had paid himself while still employed at BLC and the moneys paid to

McDougald under the George note. They also sought to exclude evidence that they had filed fraud and breach-of-fiduciary-duty claims against McDougald.

Although the parties had stipulated that evidence concerning the parties' dismissed claims or counterclaims would be inadmissible, the circuit court granted McDougald's motion in limine, which prohibited the Chamberses from offering evidence of McDougald's breach of his obligation to continue working for BLC or that he continued to pay himself while working at BLC. The court reasoned that because BLC was not named a party, the evidence that McDougald may have breached the employment provision of the purchase agreement was inadmissible and not to be discussed before the jury.

A motion for reconsideration was filed by the Chamberses, arguing that the employment provision was a condition of the purchase agreement that qualified their performance (that is, paying the note). McDougald responded to the motion, again arguing that the Chamberses could not assert defenses that belonged to either BTR or BLC. The court denied the motion.

The case proceeded to a jury trial. The jury awarded McDougald $300,000 plus prejudgment interest at the rates specified in the promissory note. Judgment was entered on the jury's verdict in the total sum of $459,698, including prejudgment interest, together with costs. McDougald was invited to ask for attorney's fees.

McDougald sought $99,985 in attorney's fees. The Chamberses resisted. The circuit court awarded attorney's fees of $102,757. After the court denied the Chamberses' motion for new trial, this appeal followed.

The parties' arguments start with the standard of review. The Chamberses argue that this case should be reviewed de novo because it involves the proper interpretation of a contract; McDougald argues that the circuit court excluded evidence, which we review under the abuse-of-discretion standard. We agree with the Chamberses. In deciding the motions in limine, the circuit court had to interpret the parties' purchase agreement. In doing so, the court determined that Paragraph 7 was a contract between McDougald and BLC. Based on that construction of the agreement, the court granted McDougald's motion and excluded evidence concerning the effect of Paragraph 7. When a contract is unambiguous, the circuit court applies the plain language of the parties' terms and determines as a matter of law how to apply the contract. *Roberts Contracting Co. v. Valentine-Wooten Rd. Pub. Facility Bd.*, 2009 Ark. App. 437, 320 S.W.3d 1; *see also Fryer v. Boyett*, 64 Ark. App. 7, 978 S.W.2d 304 (1998).

Next comes McDougald's contention that the Chamberses have waived their arguments on appeal because they filed their own motion in limine in which they sought to exclude the very evidence that they now want to introduce. We reject this characterization of the Chamberses' motion because the record shows that the purpose of the motion was to exclude the fact that the Chamberses had filed their counterclaim against McDougald, not the evidence pertaining to Paragraph 7.

This brings us to the merits. The Chamberses attempted to defend McDougald's claim on the note by asserting that McDougald breached Paragraph 7 of the parties' purchase agreement. When performance of a duty under a contract is contemplated, any nonperformance of that duty is a breach. *Ark. Realtors Ass'n v. Real Forms, LLC*, 2014 Ark.

385, 442 S.W.3d 845. As a general rule, a "first breach" by one party may release the other party from his obligations. *Id*. A relatively minor failure of performance by one party does not justify the other in seeking to escape any responsibility under the terms of the contract; for one party's obligation to perform to be discharged, the other party's breach must be material. *Id*. Whether a breach is material is a question for the fact-finder. *Spann v. Lovett & Co.*, 2012 Ark. App. 107, 389 S.W.3d 77.

We disagree with McDougald's contention that this is a suit on the note, not an action for breach of contract. The note represents part of the Chamberses' obligation under the written purchase agreement and receives its validity from that document. *See Farmers Coop. Ass'n v. Garrison*, 248 Ark. 948, 454 S.W.2d 644 (1970). Moreover, McDougald acknowledged in his pleadings and at oral argument that the note was part of the consideration of the purchase price for his interest in BTR. This makes the terms of the purchase agreement important in the determination of the materiality of McDougald's failure to fully perform his obligations under Paragraph 7. *Boellner v. Clinical Study Centers, LLC*, 2011 Ark. 83, 378 S.W.3d 745; *Roberts Contracting*, *supra*. The Chamberses proffered testimony that asserted that Paragraph 7 and McDougald's continued employment with BLC was a material part of the consideration for their purchase of McDougald's interest in BTR.

The circuit court excluded the evidence concerning Paragraph 7 on the basis that only BLC could enforce that claim and that it was not a party to this case. The court erred. Evidence that McDougald breached Paragraph 7 was also admissible on the question of whether McDougald could enforce the note because, if McDougald was to enforce the note

at all, it was to be according to the terms of the purchase agreement. That agreement required McDougald to continue his employment with BLC through the term of the note (until 2009). It also required McDougald to defer his salary. The Chamberses argue that he did neither.

For their second point, the Chamberses argue that the circuit court's award of attorney's fees should be reversed. Because we reversed the underlying judgment, we reverse the fee award, too. *See Am. Transp. Corp. v. Exch. Capital Corp.*, 84 Ark. App. 28, 129 S.W.3d 312 (2003).

Reversed and remanded.

VAUGHT and BROWN, JJ., agree.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*; *Laurie A. Bridewell*; and *Robert G. Bridewell*, for appellants.

*Gibson & Keith, PLLC*, by: *C.C. "Cliff" Gibson III* and *Lee D. Curry*, for appellee.